**Nos. 22-2185, 22-2186**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AMS SENSORS USA INC., fka Texas Advanced Optoelectronic Solutions, Inc.,

*Plaintiff-Cross-Appellant*,

v.

RENESAS ELECTRONICS AMERICA, INC., fka Intersil Corporation,

*Defendant-Appellant*.

Appeal from the United States District Court for the Eastern District of Texas
No. 4:08-cv-00451-ALM

# RENESAS ELECTRONICS AMERICA, INC.'S RESPONSE AND REPLY BRIEF

JOEL F. WACKS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

BRIAN R. MATSUI
DANIEL P. MUINO
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8784
BMatsui@mofo.com

*Counsel for Defendant-Appellant Renesas Electronics America, Inc.*

JULY 14, 2023

# CERTIFICATE OF INTEREST

Counsel for Renesas Electronics America, Inc. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

Renesas Electronics America, Inc., fka Intersil Corporation.

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Renesas Electronics Corporation is a corporation under the laws of Japan and is the parent corporation of Renesas Electronics America, Inc. INCJ, Ltd. and The Master Trust Bank of Japan, Ltd. each own more than 10% of Renesas Electronic Corporation's shares.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

FOLEY & LARDNER LLP: William J. Robinson, Ashley Michelle Koley, Justin Mark Sobaje, Pavan K Agarwal, Richard Spencer Montei

SCHEEF & STONE, LLP: Anna Rebecca Skupin, Michael Charles Smith

DECHERT LLP: Chris Scott Graham, Jill F Kopeikin

SIEBMAN FORREST BURG & SMITH LLP: Clyde Moody Siebman

BRAGALONE OLEJKO SAAD PC: Daniel Fletcher Olejko, Jeffrey Ray Bragalone

JONES DAY REAVIS & POGUE: Gregory A. Castanias, Gregory L. Lippetz, Kathleen Danielle Lynott, Richard J Johnson, Scott Bradley Poteet

AT&T SERVICES INC.: Henry Leon (Lon) Outland, III

COLE SCHOTZ, PC: James Robert Perkins, Rajkumar Vinnakota

NELSON BUMGARDNER CONROY PC: Justin Bryce Kimble, Patrick Joseph Conroy, Thomas William Kennedy, Jr.

SHORE CHAN DEPUMPO LLP: Michael Wayne Shore, Stuart Douglas Dwork

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

None.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: July 14, 2023

/s/ Brian R. Matsui
Brian R. Matsui

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF AUTHORITIES ..........................................................................v

INTRODUCTION AND SUMMARY OF CROSS-APPEAL ARGUMENT..........1

ARGUMENT ..................................................................................................2

I. THE DISTRICT COURT'S LEGAL AND FACTUAL ERRORS ON TRADE-SECRET MISAPPROPRIATION AND EXEMPLARY DAMAGES COMPEL REVERSAL ..............................................................2

A. Under The Correct Legal Standard, TAOS's Trade Secret Was Properly Accessible By February 2005................................................2

B. Under The Correct Legal Standard, The Head-Start Period Lasted At Most Seven Months .............................................................7

C. Under The Mandate, The District Court Could Not Disgorge Sales That Occurred After The Head-Start Period Ended ..................13

D. The District Court Failed To Limit Disgorgement To Profits Attributable To Misappropriation ......................................................16

E. The Exemplary Damages Award Should Be Vacated ........................18

F. Equity Confirms, Not Absolves, The District Court's Errors.............21

II. THE CONTRACT AWARD IS LEGALLY AND FACTUALLY UNSUPPORTED...........................................................................................23

A. The District Court Violated Texas's One-Satisfaction Rule...............23

B. TAOS Failed To Prove Causation.....................................................29

C. TAOS Fails To Muster Support For The Contract Award..................30

1. TAOS fails to justify the inclusion of products that omit TAOS's photodiode structure ...................................................30

2. TAOS fails to justify a 10-year license.....................................33

III. TAOS'S RESPONSE CONFIRMS NO FEES SHOULD HAVE BEEN AWARDED ...........................................................................................34

IV. THE PREJUDGMENT INTEREST AWARD WAS UNLAWFUL ............35

V. ON TAOS'S CROSS-APPEAL, THE DISTRICT COURT CORRECTLY APPLIED THE MANDATE TO PREVENT TAOS FROM FURTHER EXPANDING ITS ALREADY UNLAWFUL DISGORGEMENT AWARD..........................................................................37

CONCLUSION ..........................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
707 F.3d 1318 (Fed. Cir. 2013) ....................3

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006) ....................23, 26

*Alki Partners, LP v. DB Fund Servs.*,
4 Cal. App. 5th 574 (Cal. App. 2016)....................34, 35

*Allstate Ins. Co. v. Receivable Fin. Co.*,
501 F.3d 398 (5th Cir. 2007) ....................16, 17, 38

*Behnke v. State Farm Gen. Ins.*,
196 Cal. App. 4th 1443 (Cal. App. 2011)....................29

*Briggs v. Pennsylvania R.R. Co.*,
334 U.S. 304 (1948)....................37

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) ....................15, 16

*Bryan v. Kershaw*,
366 F.2d 497 (5th Cir. 1966) ....................22

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ....................14, 15

*Carr Business Enters., Inc. v. Chowchilla*,
166 Cal. App. 4th 14 (Cal. App. 2008)....................34

*Carson Prods. Co. v. Califano*,
594 F.2d 453 (5th Cir. 1979) ....................2

*Cavnar v. Quality Control Parking*,
696 S.W.2d 549 (Tex. 1985) ....................35

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*,
150 F.3d 1354 (Fed. Cir. 1998) ....................24, 29

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*,
759 F.3d 498 (5th Cir. 2014) ....................................................................26

*Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*,
53 Cal. App. 4th 500 (Cal. App 1997)...........................................................34

*Cresthaven Nursing Residence v. Freeman*,
134 S.W.3d 214 (Tex. App. 2003)...................................................................36

*E.I. Du Pont de Nemours Powder Co. v. Masland*,
244 U.S. 100 (1917)..........................................................................................27

*Elcor Chem. Corp. v. Agri-Sul, Inc.*,
494 S.W.2d 204 (Tex. App. 1973)...................................................................22

*Engel Indus., Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999) ...............................................20, 30, 37, 39, 40

*Hyde Corp. v. Huffines*,
314 S.W.2d 763 (Tex. 1958) ...................................................................4, 8, 9, 10

*Jenni Rivera Enters. v. Latin World Ent. Holdings*,
249 Cal. Rptr. 3d 122 (Cal. App. 2019)..........................................................29

*John Bean Technologies v. Morris & Associates*,
988 F.3d 1334 (Fed. Cir. 2021) .......................................................................22

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
962 S.W.2d 507 (Tex. 1998) ...........................................................................36

*Junker v. Eddings*,
396 F.3d 1359 (Fed. Cir. 2005) .......................................................................23

*K&G Oil Tool & Serv. v. G&G Fishing Tool Serv.*,
314 S.W.2d 782 (Tex. 1958) .............................................................................3

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (Cal. 1993)...............................................................................36

*Lanier v. Sallas*,
777 F.2d 321 (5th Cir. 1985) .....................................................................19, 20

*Luccous v. J. C. Kinley*,
376 S.W.2d 336 (Tex. 1964) ....................5, 7

*Lundy v. Masson*,
260 S.W.3d 482 (Tex. App. 2008)....................25

*Mangren Rsch. & Dev. v. Nat'l Chem. Co.*,
87 F.3d 937 (7th Cir. 1996) ....................7

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)....................21, 22

*Midland-Ross Corp. v. Yokana*,
293 F.2d 411 (3d Cir. 1961) ....................5

*Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*,
809 F.3d 610 (Fed. Cir. 2015) ....................13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................22

*Quest Med., Inc. v. Apprill*,
90 F.3d 1080 (5th Cir. 1996) ....................26

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ....................21

*Sikes v. McGraw-Edison Co.*,
665 F.2d 731 (5th Cir. 1982) ....................33

*SiOnyx v. Hamamatsu Photonics K.K.*,
981 F.3d 1339 (Fed. Cir. 2020) ....................34

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................13, 29

*Southwestern Energy Production v Berry-Helfand*,
491 S.W.3d 699 (Tex. 2016) ....................17

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
948 F.2d 1573 (Fed. Cir. 1991) ....................38, 39

*Stelluti Kerr, LLC v. Mapei Corp.*,
703 F. App'x 214 (5th Cir. 2017) ....................................................................28

*Tex. Advanced Optoelectronic Sols. v. Renesas Elecs. Am.*,
895 F.3d 1304 (Fed. Cir. 2018) ....................... 2, 5, 6, 8, 9, 10, 11, 14, 16, 18, 20
............................................................................. 22, 24, 25, 26, 30, 31, 37, 38, 39

*Tony Gullo Motors I, L.P. v. Chapa*,
212 S.W.3d 299 (Tex. 2006) ....................................................................23, 25

*University Computing v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) ..........................................................................17

*Wal-Mart Stores, Inc. v. Forte*,
497 S.W.3d 460 (Tex. 2016) ..........................................................................19

*Wissman v. Boucher*,
240 S.W.2d 278 (Tex. 1951) ........................................................................3, 4

*Zalkind v. Ceradyne, Inc.*,
194 Cal. App. 4th 1010 (Cal. App. 2011)..........................................................34

**Statutes**

28 U.S.C. § 2111 ............................................................................................40

35 U.S.C. § 271(a) .........................................................................................27

35 U.S.C. § 284 ........................................................................................27, 29

Tex. Civ. Prac. & Rem. Code § 134A.002.(4).................................................2, 4

Tex. Civ. Prac. & Rem. Code § 134A.002.(5).................................................2, 4

Tex. Civ. Prac. & Rem. Code § 134A.002.(6)(B) ...........................................2, 4

Tex. Fin. Code § 304.101...................................................................................36

Tex. Fin. Code § 304.104...................................................................................36

**Other Authorities**

1 Milgrim on Trade Secrets §1.03 ................................................................4, 5

1 Milgrim on Trade Secrets §1.05 ....................................................................4, 5

2 Milgrim on Trade Secrets §7.02 ........................................................................4

Restatement (Third) of Restitution and Unjust Enrichment § 4(2) (2011)..............22

## INTRODUCTION AND SUMMARY OF CROSS-APPEAL ARGUMENT

TAOS's cross-appeal brief confirms Intersil's opening brief was correct—this Court's decision in the first appeal largely controls the outcome on trade-secret disgorgement. TAOS's brief continues to fight issues it lost in that appeal, such as that Intersil's reverse-engineering of TAOS's photodiode structure destroyed trade-secret protection. TAOS goes so far as asking this Court to reconsider its prior decision. But TAOS fails to show any error, let alone manifest error, in that decision, as would be required. Rather, the Court correctly interpreted Texas law and gave the district court clear instructions for determining the date TAOS's trade secret became properly accessible and the length of the head-start period for Intersil to implement that trade secret into its own product. The district court's repeated failures to abide by this Court's instructions are reversible error. And TAOS never contests the consequence of the error—elimination of any trade-secret award or exemplary damages given TAOS's choice to seek disgorgement for products sold only after trade-secret protection ended.

TAOS's arguments on the contract award similarly fail. It simply cannot overcome its own CEO's admission that its formerly trade-secret photodiode structure was the "entire value proposition" for any possible royalty agreement between the parties. Appx10731. That admission should have required TAOS to elect between *either* a trade-secret or a contract remedy, not both. And it shows no

reasonable jury could award the same royalty for products omitting the "entire value proposition" photodiode structure as for products including that structure.

TAOS's cross-appeal offers much of the same. It again wants this Court to ignore its own prior conclusion that TAOS lost sales of the iPhone 3G to Intersil because Intersil offered a lower bid price due to cheaper packaging, none of which had anything to do with TAOS's photodiode structure. Because on that issue the district court correctly recognized it was bound by this Court's mandate, the Court should reject TAOS's cross-appeal that argues otherwise.

## ARGUMENT

### I. THE DISTRICT COURT'S LEGAL AND FACTUAL ERRORS ON TRADE-SECRET MISAPPROPRIATION AND EXEMPLARY DAMAGES COMPEL REVERSAL

#### A. Under The Correct Legal Standard, TAOS's Trade Secret Was Properly Accessible By February 2005

Both this Court's mandate and Texas law required the district court to determine when TAOS's trade secret became "properly accessible." *Tex. Advanced Optoelectronic Sols. v. Renesas Elecs. Am.*, 895 F.3d 1304, 1317 (Fed. Cir. 2018). The subject matter of a trade secret is properly accessible when "it is readily ascertainable without engaging in tortious behavior," including readily available through reverse-engineering. *Carson Prods. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979); Tex. Civ. Prac. & Rem. Code § 134A.002.(4), (5), (6)(B). That means, in Texas as elsewhere, that subject matter which is "completely disclosed by the

goods which one markets" loses any trade-secret protection after public sale. *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951); *see Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013) (under similar Missouri law, "[i]nformation that can be obtained from examining products sold into the public domain" is unprotectable).

At TAOS's invitation, the district court failed to apply this required standard, and none of TAOS's arguments overcome the error. The district court expressly applied a different standard: "the relevant inquiry for proper accessibility is what the misappropriator did, that [*sic*] not what the misappropriator or other parties could have done." Appx99 (citing *K&G Oil Tool & Serv. v. G&G Fishing Tool Serv.*, 314 S.W.2d 782, 788 (Tex. 1958)). The district court thus applied an improper actually access*ed* standard, rejecting settled law. Appx99-101. In its view, because "reverse engineering would be required to ascertain the trade secret from Plaintiff's TSL2560 product," "the trade secret did not become properly accessible to [Intersil] until [Intersil] actually reverse-engineered" the TSL2560. Appx99-101.

Although the district court adopted TAOS's argument, TAOS now distances itself from the district court's legally flawed standard. Instead, TAOS suggests trade-secret information under Texas law loses its protection only if it becomes "'readily available by independent investigation' of *publications*." TAOSBr.37-38 (emphasis by TAOS; citation omitted). But the Texas Supreme Court rejected that

view decades ago, adopting the prevailing view that information may be "disclosed"—and hence become unprotectable—by publicly selling goods embodying that information. *Wissman*, 240 S.W.2d at 280. Such disclosed information "bec[o]me[s] public property." *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 778 (Tex. 1958). The treatise TAOS repeatedly cites, *Milgrim on Trade Secrets*, is equally stark: "trade secret protection for information that would be readily ascertainable from the examination of a product will be lost upon the sale or display of the product if, in fact, the sale or display permits such inspection." 1 Milgrim §1.03[2]. Whether such information maintains protection "is normally a function of whether the 'secret' *can be* discovered by reverse engineering." *Id.* §1.05[2] (emphasis added).

TAOS tries to manufacture consensus by quoting with ellipses both Intersil's opening brief and *Milgrim* to argue the law requires actual "'discovery by … reverse engineering'" before information loses trade-secret protection. TAOSBr.42-43 (ellipses by TAOS; quoting OB21-22; 2 Milgrim §7.02 n.3). But the opening brief's full text correctly explains that information loses protection if it is "*readily ascertainable* through proper means,' where 'proper means' includes 'discovery by independent development or reverse engineering'"—that is, information loses protection when it becomes readily ascertainable through reverse-engineering, not when it is actually ascertained. OB21-22 (quoting §134A.002.(4), (5), (6)(B);

emphasis added); 1 Milgrim §1.03, 1.05; (recognizing same); *Midland-Ross Corp. v. Yokana*, 293 F.2d 411, 413 (3d Cir. 1961) (same).

Like the district court, TAOS misreads *K&G Oil* to be relevant here and provide a different rule. TAOSBr.38-42 & n.1. *K&G Oil* addresses reverse-engineering *absent* public sales. Unlike this and the other cases just discussed, *K&G Oil* involved no public sale. The trade-secret owner leased its equipment under "a licensing agreement" that "specifically" prohibited "disassembly." *Luccous v. J. C. Kinley*, 376 S.W.2d 336, 339 (Tex. 1964) (distinguishing *K&G Oil* for this reason); Milgrim §1.05[3] (similarly explaining *K&G Oil*). Once again, *K&G Oil* "does not speak to" the issues here. *TAOS*, 895 F.3d at 1318.

TAOS hardly disputes its trade secret was ascertainable through reverse-engineering once it publicly sold the TSL2560. TAOSBr.42-44 (arguing "no legal basis" to consider). At most, TAOS quotes a made-up finding that "reverse-engineering was not 'readily' accomplished" and that the TSL2560 was "complex enough to maintain secrecy of its photodiode structure" after public sale. TAOSBr.40-42 (citing and allegedly quoting Appx98-101 (¶¶29-32)). The district court never used the word "readily" or found reverse-engineering was not readily accomplished because of purported complexity. Appx98-101. Rather, it addressed only whether the trade secret was "ascertainable at a glance," the flawed standard it purported to derive from *K&G Oil*. Appx98-101. It went no further because it

wrongly believed a public sale could not be disclosing if "reverse engineering would be required to ascertain the trade secret." Appx98-101.

Even had the district court made the findings TAOS suggests, no evidence would support them. TAOSBr.40-42. TAOS's own witness admitted ready ascertainability: "[e]verybody in [this] industry reverse engineers everybody else's chips" using a process that "can be done fairly quickly" and "at a reasonably low expense"; applying that well-known process to the TSL2560 would "show the best way among various choices to implement the interleaved photodiode array." Appx10850, Appx10966-10970; Appx11647; OB25-27 (collecting further admissions and testimony). Those admissions contradict TAOS's unsupported suggestion that Intersil's actual reverse-engineering was "facilitated" by misappropriation. TAOSBr.43 (quoting Appx108). This Court's prior decision forecloses the suggestion too, because it recognized Intersil's reverse-engineering was "*by proper means*." *TAOS*, 895 F.3d at 1317 (emphasis added). TAOS and the district court's continued insistence that Intersil's reverse-engineering was somehow *improper* shows how far both strayed from the mandate and Texas law.

Confronted with undisputed evidence showing how easily its trade secret could be reversed engineered, TAOS responds only by noting that the process involves "a scanning electron microscope costing at least $1 million." TAOSBr.41 (citing Appx10967-10969). But the same TAOS witness admitted that those in the

industry would have access to that equipment in "an internal lab or an external lab"—"[t]here are several in the Dallas area." Appx10965-10969. That is fatal to TAOS's response; the question is accessibility to those in the *industry*, not "the public" at large. *Contra* TAOSBr.38-39 (quoting Appx98). Trade-secret protection applies only to information that allows "an advantage over *competitors*," which precludes protection for information competitors can readily access. *Luccous*, 376 at 338 (Tex. 1964) (emphasis added; citation omitted); *Mangren Rsch. & Dev. v. Nat'l Chem. Co.*, 87 F.3d 937, 942 (7th Cir. 1996) (information "known within an industry" unprotectable "even if" unknown to "public at large"). In an industry where "[e]verybody" "reverse engineers everybody else's chips" using readily available equipment, unrebutted evidence shows the trade secret was readily available shortly after TAOS publicly released the TSL2560. Appx10850, Appx10966-10967.

TAOS does not contest that reversal on when its trade secret became properly accessible limits it to contract damages, even with the district court's legally flawed 26-month head-start period. OB27 (showing this); TAOSBr.44-57 (not contesting).

### B. Under The Correct Legal Standard, The Head-Start Period Lasted At Most Seven Months

TAOS's defense of the 26-month head-start period asks this Court to revisit its prior decision and depart from settled law. TAOS confirms the district court's head-start period includes:

- the "time to develop the trade secret itself," even though the head-start period begins only *after* a party properly obtains the trade secret without independent development;
- "the time to develop non-trade secret features," such as digital circuitry and a host of similar features, even though those features are not required to use the trade secret;
- and the time to develop two generations of products incorporating the trade secret, even though the first generation sold seven million units.

TAOSBr.44-57 (TAOS's emphasis and use of ellipses omitted). Recognizing the tension between the district court's ruling and this Court's earlier opinion, TAOS suggests that the Court may want to "revisit[]" its prior decision. TAOS Br.57.

None of TAOS's arguments provide any basis to depart from the Texas law this Court already considered or the mandate. As the Court explained, the head-start period asks a straightforward question: once a trade secret becomes properly accessible, how long would it have taken a competitor "to recreate that [trade secret] in its own products"? *TAOS*, 895 F.3d at 1317. The "head start" period seeks to eliminate only the competitive advantage the misappropriator may have obtained relative to others in "the trade" that would have had to wait until the trade secret became properly accessible. *Hyde*, 314 S.W.2d at 778-80.

The district court refused to apply this settled law. OB28-37. Most of TAOS's response simply ignores the relevant inquiry. TAOS repeatedly tries to justify the district court's decision because, in its view, "without misappropriation, Intersil would have likely persisted in using a demonstrably flawed design method." TAOSBr.47-57 (quoting Appx109; similarly arguing about TAOS's time to develop trade secret from scratch). But the head-start period starts only once a party has *proper* accessibility to the previously protected information. *TAOS*, 895 F.3d at 1317; *Hyde*, 314 S.W.2d at 778-80. TAOS's arguments just confirm the district court performed the wrong legal inquiry by continuing to ignore that Intersil had such proper accessibility at least by the time of its successful reverse-engineering.

There likewise is no basis for TAOS's and the district court's inclusion in the head-start period of time to develop features unrelated to the trade secret. Those arguments contravene this Court's prior holding which reduced the head-start period to the time to recreate only a single, narrowly defined trade secret. *TAOS*, 895 F.3d at 1317-18. After reversing liability for two of the three trade secrets TAOS asserted, the Court held that the only misappropriated trade secret was TAOS's "photodiode array structure." *Id.* In doing so, the Court held that by July 2003, a year before the misappropriation here, TAOS's patent publicly "disclose[d], individually, a 1:1 ratio and interleaving of shielded and unshielded wells." *Id.* at 1313. That left TAOS with a trade secret limited to "the *combination*" of those features. *Id.* at 1313, 1317-

18 (emphasis by Court). TAOS never disputes Intersil successfully integrated that combined trade-secret structure and a host of non-trade-secret features into its ISL29001—a product that sold 7 million units—within seven months of obtaining access to TAOS's design. TAOSBr.55-56. Under the correct legal standard, seven months should have been an upper limit on the head-start period. *TAOS*, 895 F.3d at 1317; *Hyde*, 314 S.W.2d at 778-80.

TAOS argues for extending the head-start period to include the time it purportedly took Intersil to improve "the quality of infrared rejection." TAOSBr.55-56 (quoting Appx11385). But doing so would be contrary to both the mandate and Texas law. Both limit the head-start period to the time to "recreate that structure," meaning the trade-secret structure. *TAOS*, 895 F.3d at 1317-18; *Hyde*, 314 S.W.2d at 778-80 (focusing on "prior knowledge of" trade secret). Intersil's ISL29001 had the trade-secret structure, so any improvements Intersil made to later products came from Intersil's own, independent contributions—not the trade-secret structure already incorporated into the ISL29001. TAOSBr.55-56.

The same goes for TAOS's and the district court's reliance on the 12-24 month so-called "market advantage" Intersil estimated it would have obtained from acquiring TAOS outright. TAOSBr.49; Appx109. Intersil based that estimate on factors independent of the trade secret, like "[o]ptical [p]ackaging" and the acquisition of "over 50 general purpose and application specific products."

Appx14934 (June 14, 2004 memo with "market advantage" estimate). And it made that estimate *before* it even knew of the trade-secret photodiode structure. Appx11025-11030 (TAOS witness explaining that trade-secret structure revealed during in-person meetings in Plano); Appx15049-15050 (emails identifying first in-person meetings in Plano on June 17, 2004); Appx14936-14937 (meeting agenda).[1]

TAOS defies the mandate and Texas precedent in another way—like the district court, it argues for extending the head-start period because its photodiode structure supposedly retained trade-secret protection *after* Intersil reverse-engineered it. TAOSBr.50; Appx110. TAOS argues protection ended then only against Intersil. It asserts this Court said "trade-secret protection against *Intersil* ended 'no later than … when *Intersil* successfully reverse-engineered the TSL2560.'" TAOSBr.50 (quoting *TAOS*, 895 F.3d at 1317; emphasis, ellipses by TAOS). But the trade secret lost all protection once it was properly accessible. This Court actually said, "[a]ccessibility by proper means rendered the photodiode array structure no longer a protected secret." *TAOS*, 895 F.3d at 1317. The result was a "loss of trade secret status." *Id.* TAOS's continued fighting of issues it litigated and lost in the first appeal just confirms the district court contravened the mandate.

[1] TAOS likewise gets the timing wrong when repeatedly touting an Intersil email describing TAOS's "raw technology" as "really cool and not that easily copied." Appx14929. That email, too, was sent before the Plano meetings at which TAOS first disclosed its photodiode structure. Appx14936-14937.

TAOS's other arguments fail for much the same reasons. Based on nothing but TAOS's say-so, TAOS accuses Intersil of "rel[ying] on mischaracterized testimony about development timelines." TAOSBr.48. But the testimony Intersil cites speaks for itself. TAOS's own former CEO admitted that "from a technical standpoint" 30 days was "a reasonable time" for Intersil "to recreate what they learned from" reverse-engineering TAOS's photodiode. Appx10856; Appx10887 ("photodiode" is "a very simple part"). That testimony describes *Intersil*'s ability to recreate the photodiode structure, not TAOS's or an expert's as TAOS wrongly argues. TAOSBr.48; OB30-31 (identifying other testimony that similarly speaks to ability of Intersil and those in industry generally).

TAOS also imagines non-existent concessions. It repeatedly asserts "Intersil does not dispute" certain district court findings, such as that Intersil's "experts offered no opinion testimony on the 'period of time to account for how its misappropriation gave it a leg up on the competition.'" TAOSBr.47-49 (quoting Appx105-106). Intersil's brief showed the opposite: those findings are "factually unsupported," including because Intersil's "technical expert" similarly explained (like TAOS's witnesses) that it would take little time and effort to implement the photodiode structure—"the structure is fairly straightforward" and would take "perhaps, a month" to implement. Appx12064, Appx12152-12154; OB35 (detailing more). And regardless, the findings TAOS cites expressly depend on the wrong

legal standard, requiring that the head-start period must account for "how long it would have taken Defendant to realistically compete." Appx105-106.

In the end, TAOS's arguments would require this Court to redo its prior opinion. Unable to avoid that truth, TAOS finally makes the ask—that the Court depart from its mandate to avoid a "manifest injustice." TAOSBr.57 (citing *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 619-21 (Fed. Cir. 2015)). But TAOS omits *Momenta*'s full standard: "it is not improper for a court to depart from a prior holding if convinced that it *is clearly erroneous* and would work a manifest injustice." *Momenta*, 809 F.3d at 620 (emphasis added; citation omitted). TAOS never tries to show any clear error in this Court's prior decision. TAOSBr.57; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("arguments not raised in" a party's "brief are waived"). Nor could it, because this Court's prior decision correctly interpreted and applied Texas law. And as explained in Part I.F, *infra*, the equities here favor Intersil, not TAOS.

As with proper accessibility, TAOS does not contest that reversal on the flawed head-start period alone limits it to contract damages. OB37 (explaining same); TAOSBr.58-62 (not contesting).

### C. Under The Mandate, The District Court Could Not Disgorge Sales That Occurred After The Head-Start Period Ended

Even accepting the district court's flawed proper-accessibility date and head-start period, Intersil received only $454,000 in profits from sales by the end of that

period. OB37 (explaining same); TAOSBr.58-62 (not disputing). Under this Court's mandate, that was the upper limit on disgorgement: "On remand, any determination of sales-based monetary relief for trade-secret misappropriation requires evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period." *TAOS*, 895 F.3d at 1318. "That limited head-start period, which 'depends upon the facts of each particular case,' ends TAOS's entitlement to monetary relief." *Id.* (alteration and citation omitted). TAOS thus is wrong that the mandate merely "instructed the district court to fashion equitable relief based on a 'head-start period.'" TAOSBr.58.

TAOS does not dispute that the district court awarded sales-based monetary relief of more than $8 million, 95% of the disgorgement award, for "sales" that "continued beyond March 2008"—after the district court's head-start period ended, Appx114. TAOSBr.58-62. Instead, TAOS argues the mandate could not have foreclosed TAOS from seeking disgorgement of profits beyond the head-start period because TAOS was the appellee, not the appellant, in the first appeal. TOASBr.62 (arguing first appeal was "*Intersil*'s appeal").

But the mandate binds appellees too. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1355-57 (Fed. Cir. 2009). It precludes both parties from litigating issues within the scope of what this Court already decided. *Id.* In *Cardiac*, this Court had reversed a judgment of invalidity and remanded "for a new trial of

infringement and reassessment of damages" based on an altered claim construction. *Id.* On remand, the district court permitted the challenger to raise a new anticipation defense. *Id.* This Court reversed in a second appeal, holding that "anticipation was not properly before the district court on remand" given the "explicit instructions" in the first appeal. *Id.* The district court's departure here from this Court's clear instructions compels the same result. This Court's explicit instructions cannot be dismissed as "narrow technicalities." *Contra* TAOSBr.58-62.

Nor is there merit to TAOS's newly raised argument that design wins are "sales." TAOSBr.60-61 (quoting *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013)). For starters, the district court never made such a finding; it acknowledged the sales came *after* the design wins. Appx114-116. The district court could not have reasonably made such a finding anyway. As Intersil explained, the evidence demonstrates that a design win in this market is not "[a] contract" for sales and "doesn't" guarantee "you're going to sell any products." Appx11663; Appx10722; Appx10777. TAOS has no contrary evidence.

Faced with this record, TAOS argues *Broadcom* adopted a categorical rule for any "'design wins market.'" TAOSBr.60-61 (quoting 732 F.3d at 1337). But the language TAOS quotes went to a different issue—irreparable harm for a permanent injunction—and was based on actual evidence, in that case but missing here, that the design wins effectively guaranteed sales for the ultimate product's life. *Broadcom*,

732 F.3d at 1337. TAOS is mistaken that Intersil conceded *Broadcom* controls here. *Contra* TAOSBr.61 (citing Appx15913-15915; Appx15921-15922). Intersil cited *Broadcom* (in earlier filings) for a different proposition Broadcom actually addressed—any injunction would require a "sunset period." Appx15913-15915 (citing 732 F.3d at 1338-39).

### D. The District Court Failed To Limit Disgorgement To Profits Attributable To Misappropriation

Under Texas law, "disgorgement is meant to be remedial and not punitive" and thus requires a plaintiff to "distinguish between that which has been legally and illegally obtained." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007). Yet at TAOS's urging, the district court again refused to apply this standard, saying that Texas "imposes no specific burden on a plaintiff to apportion a misappropriating defendant's profits" so long as the trade secret was "put to some commercial use." Appx111-112 (citation omitted). Having won under that standard, TAOS backtracks and insists the district court "determine[d] profits attributable to misappropriation." TAOSBr.62-68. But TAOS is not free to rewrite the district court's decision. And the findings TAOS recites were infected by the district court's application of the wrong standard. The district court's award of the entirety of Intersil's profits without attribution should be vacated. *Allstate*, 501 F.3d at 413 (rejecting disgorgement award for similar reason); *TAOS*, 895 F.3d at 1317 (vacating and remanding first trial damages award because of lack of apportionment).

TAOS is also wrong that *Southwestern Energy Production v Berry-Helfand* and *University Computing v. Lykes-Youngstown Corp.* support awarding the entirety of Intersil's profits. TAOSBr.63-65 (citing 491 S.W.3d 699 (Tex. 2016); 504 F.2d 518 (5th Cir. 1974)). Neither decision reviewed an equitable disgorgement award. *Berry-Helfand* focused on "actual" damages and, even so, explained the need for a plaintiff to prove attribution. 491 S.W.3d at 710-11 (plaintiff can show, e.g., "actual profits *resulting from* the use or disclosure," "the value a reasonably prudent investor would have paid," "the value of the trade secret"; emphasis added). *University Computing* addressed a "reasonable royalty," not general standards for a "restitutionary remedy," which TAOS equates with disgorgement. TAOSBr.63-64 & n.4 (quoting 504 F.2d at 539). And like the Texas Supreme Court, the Fifth Circuit was clear that a plaintiff must "measure the value to the defendant of what he actually obtained from the plaintiff." *Id.*

TAOS also has no support for its argument that Texas law entitles it to the entirety of Intersil's profits if TAOS proved Intersil would have made no sales to Apple "but-for" misappropriation. TAOSBr.64-68. Texas law required TAOS and the district court to "distinguish between" profits "legally obtained" based on non-trade-secret factors and those attributable to the misappropriated photodiode structure. *Allstate*, 501 F.3d at 413. TAOS's but-for theory fails to make that distinction because the evidence shows the same but-for connection for other factors

TAOS dismisses, including bid price. This Court already held "TAOS itself attributed Intersil's iPhone 3G win primarily to Intersil's significantly lower bid," and TAOS never contests its CEO's admission that TAOS lost the iPod business for the same reason. *TAOS*, 895 F.3d at 1321; Appx14220. TAOS's CEO also admitted other factors were a but-for cause of Apple sales, stating a component with the same photodiode structure but without "all the fancy digital stuff, the analog-to-digital converter, the serial bus, and the like" was "not acceptable to Apple." Appx10756-10757. The district court erred in failing to attribute value to those factors.

### E. The Exemplary Damages Award Should Be Vacated

Intersil's opening brief showed the jury's award of exemplary damages was improper for two independent reasons: Texas law limits exemplary damages where a party fails to prove compensatory damages and TAOS failed to prove such damages here; and, in any event, exemplary damages should have been an issue for the judge, not the jury.

On the first, TAOS makes a self-defeating argument. It argues Texas Civil Practice & Remedies Code § 41 "applies to 'any action' in which exemplary damages are sought" and "'restrict[s] and structure[s] the recovery of exemplary damages.'" TAOSBr.70-73 (citations and emphasis omitted). But that is Intersil's point: Chapter 41 applies here and limits TAOS's ability to recover exemplary damages in the absence of compensatory damages. OB42-44. TAOS never disputes

Intersil's showing that disgorgement is not compensatory here because it is neither economic or non-economic damages under Texas law. OB42-44; TAOSBr.70-73. The district court thus exceeded Chapter 41's limit when it allowed TAOS to recover more than $17 million without proving *any* compensatory damages. OB42-44. *Wal-Mart Stores, Inc. v. Forte*, the decision TAOS says "ends the inquiry" (at 72), confirms this: "Chapter 41 limits the amount of exemplary damages relative to compensatory damages, and, more importantly for our purposes here, precludes an award of exemplary damages unless other damages, besides nominal damages, are awarded." 497 S.W.3d 460, 466 (Tex. 2016). Given the undisputed fact TAOS proved no compensatory damages, Chapter 41 "precludes an award of exemplary damages." *Id.*

Second, TAOS cannot overcome the Fifth Circuit's holding that punitive damages under Texas law, which includes the exemplary damages here, "cannot be tried in isolation" from the underlying claim. *Lanier v. Sallas*, 777 F.2d 321, 326 (1985). TAOS dismisses *Lanier* because the issue there was "appealability" of punitive damages separate from the underlying claim. TAOSBr.74-75. But TAOS fails to explain why that distinction matters, particularly given the Fifth Circuit's reasoning: "To recover punitive damages, the plaintiff would have to prove every element of her cause of action for medical malpractice and also prove malice or gross negligence." *Lanier*, 777 F.2d at 325. The Fifth Circuit thus held punitive damages

are not "separate and distinct" from the underlying claim because deciding punitive damages necessarily redecides the underlying claim. *Id.* That is more than mere "overlapping *evidence*" (TAOSBr.76; emphasis by TAOS), and confirms the Constitution here prohibited separate factfinders from deciding disgorgement and exemplary damages. OB44-45 (explaining same).[2]

TAOS's forfeiture arguments also fail. TAOS wrongly contends "Intersil's first appeal could have but did not present its challenges." TAOSBr.68-70. But Intersil's current challenge to exemplary damages arose only after TAOS failed to prove compensatory damages at the *second trial*. Similarly, Intersil's argument that the judge was required to determine disgorgement and exemplary damages together arose only *after* this Court ordered the judge to decide disgorgement on remand. Plus, as *Engel* explains and TAOS neglects, the mandate forecloses "[o]nly the issues actually decided—those within the scope of the judgment appealed from, *minus those explicitly reserved or remanded by the court*." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (emphasis added). Here, this Court remanded exemplary damages. *TAOS*, 895 F.3d at 1332. These issues thus

---

[2] TAOS is wrong that that "this Court remanded only the *amount* of (not *liability* for) exemplary damages." TAOSBr.75 n.5. The Court rejected liability for two of TAOS's three asserted trade secrets, said nothing about affirming liability for exemplary damages, and instead "vacate[d]" the "award of exemplary damages" and "remand[ed] for further proceedings." *TAOS*, 895 F.3d at 1332.

are unlike TAOS's and the district court's mandate-defying issues, which the Court decided against TAOS in the first appeal *and* its remand instructions explicitly foreclosed. *Supra* Parts I.A-D.

### F. Equity Confirms, Not Absolves, The District Court's Errors

Unable to justify what the district court did, TAOS asks this Court to overlook the many errors under some amorphous "equitable discretion." TAOSBr.32-68. But the wide-ranging "discretion" TAOS posits just does not exist. As the Supreme Court has explained, "[d]iscretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (rejecting notion that "no legal standard governs" issues left to discretion); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147-50 (Fed. Cir. 2011) (similar). To the extent the district court was exercising any discretion, the court abused it by making legal and clear factual errors.

Here, TAOS asks the Court to apply standardless whims. For example, TAOS argues the district court "had discretion to find that Intersil did not realize its unfair competitive advantage until it released the ISL29003." TAOSBr.56. Based on what standard, TAOS never says. TAOSBr.56. TAOS does the same with other issues, like including profits from sales after the district court's head-start period ended, which was apparently "within the court's discretion to fashion equitable relief"

based on another unidentified standard. TAOSBr.51-52. The Court should reject TAOS's arguments for standardless discretion. *Martin*, 546 U.S. at 139.

TAOS is mistaken in assuming this Court's holding that TAOS had no right to a jury trial for disgorgement conferred the wide-ranging discretion TAOS imagines. This case is unlike the decisions TAOS invokes, like *John Bean Technologies v. Morris & Associates*, involving weighing purely equitable issues like "equitable intervening rights" and "laches." 988 F.3d 1334, 1337, 1339 (Fed. Cir. 2021); *Bryan v. Kershaw*, 366 F.2d 497, 502 (5th Cir. 1966) (similar); *Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 212 (Tex. App. 1973). This Court and the Supreme Court already recognized that disgorgement is different and "'not easily characterized as legal or equitable.'" *TAOS*, 895 F.3d at 1325 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014)). That is in part because modern disgorgement lacks characteristics of traditional equitable relief, such as any requirement to show "inadequacy of available remedies at law." Restatement (Third) of Restitution and Unjust Enrichment § 4(2) (2011) (quoted approvingly in *TAOS* and *Petrella*). It is also because, as this Court's first decision underscores, the issues here are governed by legal standards rather than the ad hoc balancing characteristic of purely equitable issues. *TAOS*, 895 F.3d at 1317-18.

* * * * *

For any of these reasons, the trade-secret award should be reversed or vacated.

## II. THE CONTRACT AWARD IS LEGALLY AND FACTUALLY UNSUPPORTED

### A. The District Court Violated Texas's One-Satisfaction Rule

The district court's mix-and-match approach to damages ran afoul of Texas's one-satisfaction rule restricting plaintiffs to "one recovery for one injury." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006); *see Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006) (similar).

Following the first trial, TAOS recognized it could not obtain a double recovery for both its trade secret and contract claims and elected its trade-secret remedy. Appx1192. After all, its own presentation at the first trial—which determined liability—confirmed its trade secret and contract claims are based on the same wrongful act and resulting injury. TAOS alleged Intersil breached the confidentiality agreement by "us[ing] TAOS's Confidential Information," and misappropriated that same information, which "constitute[d] TAOS's trade secrets." Appx281; *see also* Appx1103-1104, Appx1106-1107. TAOS's expert testified that both claims had the same value for that single injury—a reasonable royalty calculated by applying the same fee to the same sales. Appx3655-3656, Appx3676, Appx5339; *see Junker v. Eddings*, 396 F.3d 1359, 1368 (Fed. Cir. 2005) (identical awards for different claims suggests impermissible double recovery). Yet following this Court's remand on trade-secret disgorgement, the district court improperly

allowed TAOS to obtain both contract and trade-secret remedies so long as they were measured by the sales of different products. OB45-52 (explaining same).

None of TAOS's arguments justifies the district court's departure from Texas's one-satisfaction rule.

*First*, TAOS argues the awards here comply with the one-satisfaction rule because the confidentiality agreement provided broader protection than Texas trade-secret law. TAOSBr.78-81. It argues Intersil's trade-secret liability was limited to the head-start period, but its contractual liability could extend past that time. TAOSBr.78-79. Even were TAOS correct about differences in protection, any such difference would not matter because TAOS proved liability for only a single wrong causing a single injury—improper use of TAOS's trade-secret and confidential information in 2004. *TAOS*, 895 F.3d at 1313-1316 (limiting TAOS's trade-secret claim to this single misappropriation); Appx117-118 (district court on remand doing same for contract claim); *see TAOS*, 895 F.3d at 1328-29 (recognizing potentially different rule for a continuing tort like patent infringement). TAOS itself affirmatively relied on that fact to seek damages for sales occurring long after the confidentiality agreement's three-year term expired. Appx14020-14021.

At most, TAOS's argument shows its trade-secret and contract claims might offer different ways to compensate TAOS for its single injury. *See Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1359-60 (Fed. Cir. 1998) (describing

potential differences under California law in "damages" that "complainant may recover" between trade secret and contract). But that is why a plaintiff like TAOS gets to elect recovery "on the most favorable theory." *Chapa*, 212 S.W.3d at 304. Potential differences do not mean a plaintiff gets to recover twice. *Lundy v. Masson*, 260 S.W.3d 482, 506 (Tex. App. 2008) (one-satisfaction rule applies "even where the amounts awarded vary from claim to claim").

Even so, TAOS is wrong that contractual protection extended beyond trade-secret protection here. TAOSBr.78-81. For one, the contract applies only to "Confidential Information which either of us obtains from the other." Appx14922 (parenthetical omitted). But just as with TAOS's trade-secret claim, once Intersil lawfully obtained TAOS's photodiode structure through reverse-engineering, Intersil independently possessed that information without having obtained it from TAOS. *TAOS*, 895 F.3d at 1317-18 (recognizing similar principle for trade secret). Also, protection under the confidential agreement ended once information "bec[ame] generally available to the public." Appx14922. TAOS's public sales of products disclosing its confidential information thus destroyed any contractual protection, just as those sales ended trade-secret protection. *Supra* Part I.A.

*Second*, TAOS argues the one-satisfaction rule poses no bar because the trade secret and contract awards were calculated based on different sales. TAOSBr.82-86. But to support that argument, TAOS commits a basic logical fallacy—it argues

that because other decisions recognized a double recovery when damages were based on "the *same sales* of the *same accused devices*," there is no double recovery when damages are based on different sales of different devices. TAOSBr.82-86 (emphasis by TAOS; citing *Aero*, 466 F.3d at 1018-19; *TAOS*, 895 F.3d at 1328-29). Those decisions held only that damages based on the same sales for the same devices were sufficient to show a double recovery; neither held that damages based on such sales are necessary to show a double recovery, as TAOS wrongly assumes. *Aero*, 466 F.3d at 1018-19; *TAOS*, 895 F.3d at 1328-29.

Texas has no such rule. The question is not whether sales are the same or different but whether there is "a single, indivisible injury." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 509 (5th Cir. 2014). Thus in *Coastal*, the court barred double recovery for a fraudulent scheme to endorse 964 checks over the course of several years. *Id.* at 502. Although each check was different, there was a single fraudulent scheme causing "a single injury, for the whole amount lost," rather than "a collection of injuries, for each check." *Id.* at 509. As shown, the trade-secret misappropriation and contract breach here are also a single, indivisible injury regardless of whether they are valued based on multiple, differing product sales.

Nor can TAOS overcome the Fifth Circuit's warning that plaintiffs cannot "cut and paste elements of relief arising from different theories of recovery." *Quest*

*Med., Inc. v. Apprill*, 90 F.3d 1080, 1094 (5th Cir. 1996). TAOS protests it is "'not parsing individual damage elements' like seeking 'just attorney's fees from the breach claim combined with just the disgorged profits from the misappropriation claim for an individual product.'" TAOSBr.86 n.8 (citation omitted). The practical result is the same—by electing its remedies on a product-by-product basis, TAOS obtained a combination of damage elements unavailable under either cause of action.

There similarly is no merit to TAOS's alleged discovery of a general rule that "[r]ecovery of different remedies on different sales arising from use of the same intellectual property is 'quite common.'" TAOSBr.83-84 (citing cases about patent infringement). For starters, no universal "intellectual property" rule exists, even if trade secret or contract claims could count as "intellectual property" (*but see E.I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102 (1917) (questioning "property" label "as applied to trademarks and trade secrets")). It is no surprise that TAOS cites only patent cases—the Patent Act defines each sale as a new infringing act. 35 U.S.C. § 271(a). Congress guarantees patentees at least "a reasonable royalty" for each sale. *Id.* § 284. Neither trade-secret nor contract law is similar. The sales here were not independent liability-triggering acts. There likewise is no guarantee—statutory or otherwise—of a reasonable royalty. For these reasons, TAOS's arguments about "continuing tort[s]" miss the point (at 85-86)—these are not patent claims and cases addressing patent-specific rules are inapplicable here.

TAOS's only other authority for this point is the unpublished *Stelluti Kerr, LLC v. Mapei Corp.*, 703 F. App'x 214 (5th Cir. 2017). TAOSBr.84-85. *Stelluti* involved an alleged breach of, and tortious interference with, an agreement to buy a fixed number of machines. 703 F. App'x at 219-29. Because the plaintiff had contracted for a fixed number of machine sales, the Fifth Circuit agreed it had not received a complete recovery for its single injury until it recovered the lost profits from all the fixed sales. *Id.* No similar facts exist here.

*Third*, TAOS argues there is no double recovery here because the jury in the second trial on damages could have found Intersil breached the confidentiality agreement by using information beyond TAOS's trade-secret photodiode structure. TAOSBr.87-92, 78 n.6. But by the time the district court held that damages trial, the scope of liability had been fixed. Liability was determined at the first trial, where TAOS itself represented that its trade secrets were coextensive with the information protected by the confidentiality agreement. Appx5009; *supra* pp. 23-24. TAOS's attempt to revisit that liability determination at the second trial on damages was improper. And TAOS contradicts itself when it argues Intersil's appeal brief failed to dispute whether the first jury could have found a breach based on information beyond the trade secret. TAOSBr.91, 99. In the same paragraph, TAOS acknowledges Intersil disputed that very point, dismissing "Intersil's depictions of the first trial record [as] inaccurate and irrelevant." *Id.* (citing OB46-47). Yet

besides that conclusory assertion, TAOS fails to rebut Intersil's challenge. *SmithKline*, 439 F.3d at 1320 ("'issues adverted to in a perfunctory manner'" are "deemed waived").

In any event, TAOS never responds to its own witness admissions at the second trial that the trade-secret photodiode structure was the "entire value proposition" for the contract damages award. OB50 (quoting Appx10731, TAOS witness admitting that structure was 99.5% of value). Those admissions confirm that the contract and trade-secret awards were based on the same injury—use of the photodiode structure.

### B. TAOS Failed To Prove Causation

The entire contract award must be reversed because no substantial evidence shows Intersil's breach "was a substantial factor in causing" TAOS damages or that loss of royalties were "reasonably foreseeable" at the contract time. *Jenni Rivera Enters. v. Latin World Ent. Holdings*, 249 Cal. Rptr. 3d 122, 144 (Cal. App. 2019); *Behnke v. State Farm Gen. Ins.*, 196 Cal. App. 4th 1443, 1468 (Cal. App. 2011).

Unable to identify any evidence that loss of royalties was reasonably foreseeable, TAOS again turns to patent law. TAOSBr.93-96. But patent law guarantees successful plaintiffs a royalty without proving foreseeability. 35 U.S.C. § 284. The sole California contract case TAOS cites involved a party "in the business of licensing its technology." *Celeritas*, 150 F.3d at 1359. Here, TAOS's

former CEO repeatedly testified that TAOS was unequivocally unwilling to license its technology. Appx10630; Appx10864.

Forfeiture cannot save TAOS. *Contra* TAOSBr.92-93. Intersil's Rule 50(b) motion argued "the royalty rate cannot stand because there was no evidence that the parties to the NDA contemplated that result nor was a royalty reasonably foreseeable." Appx13008. Renesas raises the same issue here.

### C. TAOS Fails To Muster Support For The Contract Award

As Intersil showed, the contract award should be reversed because it includes royalties for products that have little to do with TAOS's confidential information and for products sold years after Intersil could lawfully use that information. OB53-57. None of TAOS's responses shows otherwise.

#### *1. TAOS fails to justify the inclusion of products that omit TAOS's photodiode structure*

On products that omit TAOS's photodiode structure, TAOS incorrectly asserts this Court's mandate precludes the issue. TAOSBr.96-97. But "[o]nly the issues actually decided" are "foreclosed from further consideration." *Engel*, 166 F.3d at 1383. This Court's prior decision resolved only liability, and as relevant here, for TAOS's trade-secret claim. *TAOS*, 895 F.3d at 1332. It decided nothing about contract damages. *Id.*

On the merits, TAOS primarily argues "[t]here was substantial evidence that all Accused Products 'used' TAOS's confidential information, including but not

limited to the photodiode structure." TAOSBr.97. But use of TAOS's photodiode structure to develop derivative products is not the issue. The issue is whether substantial evidence supports an implied jury finding that Intersil would have paid the same royalty for products omitting that structure—a structure TAOS's witness said was "99.5%" of the value—as for products incorporating it. Appx10844-10845. On that issue, TAOS remains notably silent. TAOSBr.96-100 (citing cases about liability for breach based on use but not addressing damages calculation).

TAOS alternatively argues the jury could reasonably have concluded the derivative products incorporate the trade secret. TAOSBr.98-100. But that would mean all products are primary products, which undermines the jury's verdict giving separate value to "Derivative Products." Appx52. Regardless, as shown on the next page, TAOS's own photos contradict its view—none of the images of derivative products shows "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern." *TAOS*, 895 F.3d at 1313; Appx11680-11681 (TAOS witness admitting these products "do not duplicate" the trade secret).

"Primary" ISL29003/10/13
(Appx15831)



"Derivative" ISL29023
(Appx15843)



"Derivative" ISL29011
(Appx15859)



"Derivative" ISL29102
(Appx15851)



### *2. TAOS fails to justify a 10-year license*

By the time of the hypothetical negotiations in August 2004, both parties knew the TSL2560 would be released in less than a year. Appx11862-11868; Appx10848. It was unreasonable to find the parties would have agreed to royalties for 10 years to use information they knew Intersil would be able to lawfully reverse-engineer within months. TAOS's primary response is that "there was no evidence that the TSL2560's release made TAOS's confidential information 'public and unprotected' under the NDA." TAOSBr.101. That is wrong. *See supra* p. 25. It is also unresponsive because it fails to address the parties' knowledge at the time of the negotiation.

Nor does TAOS have any good response to the parties' knowledge at the time of the negotiation that the confidentiality agreement itself was set to expire less than 3 years later. OB56. Rather, TAOS just argues it was entitled to post-contract-expiration damages for Intersil's pre-expiration breach. TAOSBr.100-103. But TAOS again fails to identify any evidence showing a jury could reasonably find the parties would agree to a 10-year term for use of information that could be used free of charge in 3 years.

Neither of TAOS's cited decisions supports affirmance. *Sikes v. McGraw-Edison Co.* neither applied California law nor the *Georgia Pacific* framework, both of which the parties agree govern here. 665 F.2d 731, 737 (5th Cir. 1982). And as

Intersil's brief explained, *SiOnyx v. Hamamatsu Photonics K.K.* addressed only backwards-looking relief, not a forward-looking hypothetical negotiation. 981 F.3d 1339, 1350-51 (Fed. Cir. 2020). On that, TAOS never responds. TAOSBr.102-03.

## III. TAOS'S RESPONSE CONFIRMS NO FEES SHOULD HAVE BEEN AWARDED

The district court erred in holding that an indemnity provision for third-party claims created an exception to California's default rule against attorney fees for contract claims. TAOS argues the agreement "'use[s] the term 'indemnity' to include direct liability'" because the only parties identified in the indemnity provision are TAOS and Intersil and the provision is triggered by a contract breach. TAOSBr.104 (citation omitted). But California courts routinely interpret such boilerplate indemnity-provision language as insufficient to overcome the default rule against fees. *See, e.g., Alki*, 4 Cal. App. 4th at 598, 602-03; *Carr Business Enters., Inc. v. Chowchilla*, 166 Cal. App. 4th 14, 19-20, 23 (Cal. App. 2008). TAOS's cited cases do not show otherwise. In *Zalkind v. Ceradyne, Inc.*, the court interpreted the indemnity provision to apply to claims between the contracting parties to avoid making other contract provisions "superfluous." 194 Cal. App. 4th 1010, 1027-29 (Cal. App. 2011); *Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 508-09 (Cal. App 1997) (same for TAOS's other cited case). TAOS never contends similar facts exist here.

TAOS also argues that because the indemnification provision covers losses that result from breach of the agreement, the provision must authorize fees incurred in an action between the parties. TAOSBr.103-04. But California courts have held that virtually identical language—indemnifying the other party "against any and all costs, losses, claims, damages or liabilities . . . resulting in any way from the performance *or non-performance*" of the contract—cannot overcome the presumption that an indemnification provision does not authorize fees incurred in an action to enforce the contract. *Alki Partners, LP v. DB Fund Servs.*, 4 Cal. App. 5th 574, 598 (Cal. App. 2016) (emphasis added).

## IV. THE PREJUDGMENT INTEREST AWARD WAS UNLAWFUL

The district court's decision to award prejudgment interest calculated from the date TAOS filed suit contravenes California and Texas law. Courts in both states recognize that prejudgment interest is intended to make plaintiffs whole; plaintiffs are "not entitled to recover prejudgment interest on damages until those damages have actually been sustained." *Cavnar v. Quality Control Parking*, 696 S.W.2d 549, 554-555 (Tex. 1985); OB59-61. At the time TAOS filed suit, the vast majority of sales underlying its contract and disgorgement awards had not yet happened. Appx15870-15871; Appx15814-15815. Accruing interest on yet-to-occur sales impermissibly went beyond mere compensation.

TAOS argues Intersil failed to support "sale-by-sale accrual" for prejudgment interest. TAOSBr.105-106. But TAOS is the party seeking prejudgment interest. It has the burden to propose a workable award consistent with applicable law. *E.g.*, *Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644, 660 (Cal. 1993) ("it is plaintiff who bears the burden"); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 223 (Tex. App. 2003) (similar under Texas law).

TAOS also erroneously invokes a Texas statute that explicitly applies "only to a wrongful death, personal injury, or property damage case." TAOSBr.105 (citing Tex. Fin. Code § 304.104); Tex. Fin. Code § 304.101. This is not a "property damage case" under Texas law, because it involves no "claims for damage to tangible property"; mere claims for "economic loss or loss of economic opportunity" are insufficient. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998). TAOS's reliance on patent cases involving lump-sum royalty payments is just as flawed, because unlike here, loss of funds from a lump-sum royalty *does* occur before sales are made. *Contra* TAOSBr.108.

TAOS argues Intersil failed to challenge the district court's application of three factors that California courts use to determine the propriety of prejudgment interest. TAOSBr.107. But the district court applied those factors to determine whether to award prejudgment interest, not to decide the date from which interest

should accrue. Appx12986-12987. On that issue, the district court wrongly believed it had no choice but to adopt TAOS's proposal. Appx12987.

## V. ON TAOS'S CROSS-APPEAL, THE DISTRICT COURT CORRECTLY APPLIED THE MANDATE TO PREVENT TAOS FROM FURTHER EXPANDING ITS ALREADY UNLAWFUL DISGORGEMENT AWARD

The district court correctly concluded that the mandate precluded including in the disgorgement award profits from the iPhone 3G. "[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Penn. R.R.*, 334 U.S. 304, 306 (1948). "Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel*, 166 F.3d at 1383.

The mandate here foreclosed TAOS from continuing to litigate whether Intersil's use of TAOS's photodiode array structure caused Intersil's iPhone 3G design win. This Court already held that TAOS failed to prove "that it would have won the contract had Intersil not used TAOS's photodiode array structure." *TAOS*, 895 F.3d at 1321. The Court recognized instead that "Intersil's iPhone 3G win" was attributable "primarily to Intersil's significantly lower bid price, made possible by using the (lower cost) plastic packaging." *Id.* This Court's prior decision reviewed extensive evidence from the first trial to reach that conclusion. *Id.* And it relied on that holding to conclude that "there [was] no basis for viewing the requested disgorgement of all of the defendant's profits as a 'proxy' for actual damages." *Id.*

The district court was therefore bound by that conclusion, "absent certain exceptional circumstances," which TAOS does not contend exist here. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991).

That causation holding precluded including the entirety of Intersil's profits from the iPhone 3G design win in the disgorgement award, which is the only iPhone 3G-based disgorgement award TAOS requested. TAOS was only entitled to disgorgement of profits "causally related to the wrongdoing at issue." *Allstate*, 501 F.3d at 413 (internal quotation marks omitted). The only "wrongdoing at issue" in this case was misappropriation of the 1:1 photodiode structure. *TAOS*, 895 F.3d at 1321. Because the iPhone 3G win was not attributable to that wrongdoing, *id.*, profits flowing from those sales could not be disgorged, *Allstate*, 501 F.3d at 413.

TAOS's arguments to the contrary are unavailing. It incorrectly argues the district court misread this Court's original decision. TAOSBr.112-14. In its view, this Court only held that disgorgement was not an accurate proxy for TAOS's damages and that therefore TAOS was not entitled to a jury determination on disgorgement. *Id.* According to TAOS, that conclusion only spoke to whether misappropriation of the trade secret caused TAOS's loss, not whether it also led to Intersil's profits. *Id.* But TAOS misses that the underlying basis for this Court's no-proxy-for-damages holding was that the iPhone 3G design win was attributable to price, not trade-secret misappropriation. That conclusion was incorporated in this

Court's mandate and could not be revisited by the district court even in its analysis of other legal issues. *Mor-Flo,* 948 F.2d at 1576.

TAOS also incorrectly contends that this issue was expressly reserved by this Court's previous decision. *See* TAOSBr.109-10. "[I]ssues actually decided" are "foreclosed from further consideration" unless they are "*explicitly* reserved or remanded by the court." *Engel*, 166 F.3d at 1383 (emphasis added). This Court held that TAOS failed to show Intersil's use of TAOS's photodiode structure caused Intersil to win the iPhone 3G contract and remanded for the district court to enter "a decision on disgorgement" consistent with the Court's decision. *TAOS*, 895 F.3d at 1319, 1321, 1332. Thus, far from explicitly reserving or remanding whether price or the photodiode structure was responsible for the iPhone 3G design win, the Court actually decided it. *Id.* The district court correctly adhered to that decision.

TAOS misses the mark when it points out that the previous decision expressly reserved two issues related to disgorgement: "gross versus net profits" and "proper apportionment to the trade secret used in devices containing other features," *TAOS*, 895 F.3d at 1317 n.7. TAOSBr.109-10. The limited remand on those issues did not give the district court license to revisit any determination relevant to disgorgement generally. It simply meant that the district court was required to decide issues that (unlike the question of what caused the iPhone 3G design win) this Court's previous decision did not reach. *See Lockformer*, 166 F.3d at 1383.

Finally, TAOS is wrong that the evidence at the second trial compelled the conclusion that Intersil's iPhone 3G design win was attributable to misappropriation of the photodiode structure. TAOSBr.110-11. To the contrary, the district court's conclusion that the iPhone 3G design win was attributable to pricing was amply supported by the evidence in addition to being compelled by the mandate. *See, e.g.,* Appx10738 (TAOS's former CEO agreeing "Apple wasn't really worried or concerned about a perfect photopic" response, "so long as the price is right"); Appx10744-10752; Appx14468. Even had the district court misinterpreted the mandate, that evidence would render any error harmless. *See* 28 U.S.C. § 2111.

## CONCLUSION

For the reasons given, the judgment should be reversed, reduced, or vacated and remanded for further proceedings.

Dated: July 14, 2023

Respectfully submitted,

/s/ Brian R. Matsui
BRIAN R. MATSUI
DANIEL P. MUINO
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8784
BMatsui@mofo.com

JOEL F. WACKS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

*Counsel for Defendant-Appellant Renesas Electronics America, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 28.1(b) because it contains 8,882 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b)(2), as determined by the word-counting feature of Microsoft Word.

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, including serifs, using Microsoft Word in Times New Roman 14-point font.

Dated: July 14, 2023

/s/ Brian R. Matsui

ny-2566183