No. 2022-2185, -2186

# United States Court of Appeals for the Federal Circuit

AMS SENSORS USA INC.,
fka Texas Advanced Optoelectronic Solutions, Inc.,

*Plaintiff-Cross Appellant*,

*v.*

RENESAS ELECTRONICS AMERICA, INC.,
fka Intersil Corporation,

*Defendant-Appellant*.

On Appeal from the U.S. District Court for the Eastern District of Texas, No. 4:08-cv-00451-ALM, Judge Amos L. Mazzant, III

## AMS SENSORS USA INC.'S CROSS-APPEAL REPLY BRIEF

MICHAEL A. MCCABE
MICHAEL C. WILSON
ROBERT D. MCCUTCHEON
JORDAN C. STRAUSS
CHASE A. COBERN
MUNCK WILSON MANDALA LLP
12770 Coit Road, Suite 600
Dallas, Texas 75251
(972) 628-3600
mmccabe@munckwilson.com

*Counsel for Plaintiff-Cross Appellant*

August 25, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................... i

TABLE OF AUTHORITIES .................................................... ii

ABBREVIATIONS AND CITATIONS KEY ............................ iii

INTRODUCTION ................................................................... 1

ARGUMENT ........................................................................... 4

I. The Mandate Expressly Remanded The Scope Of Equitable Disgorgement To The District Court. ................ 4

II. The District Court's Misinterpretation Of The Mandate Reduced The Judgment By Over $10 Million. ................. 12

III. There Is No Dispute That Modification Is More Appropriate Than Remand. ............................................ 17

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .. 18

CERTIFICATE OF COMPLIANCE ...................................... 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allstate Ins. Co. v. Receivable Fin. Co., LLC*,
501 F.3d 398 (5th Cir. 2007)....................9

*Engel Indus., Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999)....................4, 12

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021)....................12

*Simpson v. United States*,
322 F.2d 688 (5th Cir. 1963)....................18

*Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*,
895 F.3d 1304 (Fed. Cir. 2018)....................*passim*

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974)....................7

**Statutes**

TEX. CIV. PRAC. & REM. CODE §41.008(b)....................16, 18

TEX. FIN. CODE §304.104....................18

**Other Authorities**

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §51 cmt. f (AM. L. INST. 2011)....................9

**Note**

All quoted emphasis is added unless otherwise indicated.

## ABBREVIATIONS AND CITATIONS KEY

References to this Court's prior decision in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) shall be in the form of "Op.[pg#]."

References to Renesas's Response and Reply Brief shall be in the form of "R&R[pg#]."

References to AMS Sensors USA Inc.'s Principal and Response Brief shall be in the form of "TAOSBr.[pg#]."

## INTRODUCTION

TAOS's cross-appeal raises a single, straightforward question: Did this Court's prior decision empower the district court to determine the scope of equitable disgorgement? The mandate's plain text answers that question in the affirmative. This Court remanded for "a decision on disgorgement by the trial court"—including all attendant "findings of fact." Op.1319. And it expressly *declined* to find facts in the first instance regarding "the amount of the award," including "proper apportionment to the trade secret used in devices containing *other features*"—like Intersil's "(lower-cost) plastic packaging." Op.1317 n.7, 1321.

Intersil argues that these broad instructions to determine *Intersil's profits* were nonetheless limited by a remark elsewhere in the mandate about the impact of Intersil's "lower bid price due to cheaper packaging" on "*TAOS*[*'s*] *lost sales* of the iPhone 3G to Intersil." R&R2. Intersil thus repeats the district court's error of interpreting this Court's discussion of a distinct legal remedy

(TAOS's lost profits) in the context of a distinct question of law (TAOS's jury trial right) as a decision about the scope of another equitable remedy (Intersil's profits) that the Court expressly instructed the district court to decide on remand.

The district court's adoption of Intersil's misinterpretation of the mandate was not "harmless." R&R40. The district court found that Intersil would not have received *any* profits from two Apple design wins but for its improper use of TAOS's trade-secret photodiode structure—a finding Intersil does not challenge on appeal. TAOSBr.58-59, 110-11 (citing Appx116(¶50)). Even after accounting for Intersil's use of other, lawful features (like cheaper packaging), the district court found that "***inclusion*** *of these design wins in* [*TAOS*]*'s disgorgement remedy is warranted and equitable under the circumstances of this case*," TAOSBr.59-60 (quoting Appx111(¶43)), and calculated the profits Intersil received from both. TAOSBr.25-27 (citing Appx117-118(¶¶52-53)). The only reason the district court did

not *include* both design wins in TAOS's disgorgement remedy was its adoption of Intersil's interpretation of the mandate to *exclude* the iPhone design win. *E.g.*, Appx71 ("*In accordance with the Federal Circuit's mandate*, [TAOS] may not elect the iPhone 3G profits."). Based on the district court's other rulings on disgorgement, exemplary damages, and prejudgment interest, its misinterpretation of the mandate erroneously excluded more than $10 million from the final judgment.

Intersil's response does not dispute that the proper remedy on appeal for reversible error is modification of the judgment to increase the disgorgement, exemplary, and interest awards in accordance with district court's other rulings and the undisputed record. TAOSBr.117-18, 5, 32; R&R37-40 (not disputing). The judgment should be affirmed as modified to account for inclusion of Intersil's profits on the iPhone design win in TAOS's disgorgement remedy. *See infra*, p.19 (listing modified figures).

## ARGUMENT

### I. The Mandate Expressly Remanded The Scope Of Equitable Disgorgement To The District Court.

Intersil agrees that this Court's prior decision did not "actually decide[]" issues that it "'*explicitly* reserved or remanded[.]'" R&R39 (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) (Intersil's emphasis)). The mandate "explicitly reserved [and] remanded" the scope of Intersil's profits subject to equitable disgorgement, including Intersil's profits arising from Apple design wins. It remanded for "a *decision on disgorgement* by the trial court, with *findings of fact* and conclusions of law duly entered in accordance with Rule 52." Op.1319. It expressly stated that this Court was "remanding for a new trial on *this relief*," including "whether to award disgorgement and, if so, *what amount to award*." Op.1319. Lest there be any doubt that the Court was *not* resolving factual disputes about the scope of profit disgorgement in the first

instance, the mandate made clear that it was "*not* address[ing] Intersil's other challenges to the *amount of the award*," including "issues of … proper apportionment to the trade secret used in devices containing other features." Op.1317 n.7. Rather, it said that "the district court should consider" those and "similar issues" if they "arise on remand." Op.1317 n.7.

Despite these explicit instructions broadly remanding the scope of disgorgement to the district court, Intersil claims the mandate "actually decided" a discrete subsidiary question of "whether price or the photodiode structure was responsible for the iPhone 3G design win," and implicitly *held* that "profits flowing from those sales could not be disgorged." R&R38-39. Like the district court, Intersil relies solely on this Court's discussion of the evidence regarding *TAOS's lost profits*. R&R37 ("This Court already held that TAOS failed to prove 'that *it would have won* the contract had Intersil not used TAOS's photodiode array structure.'") (quoting Op.1321); *accord*

Appx118(¶53) (district court: "[T]he Federal Circuit already found 'no evidence' that [Intersil]'s profits from misappropriation correlated with [*TAOS*]*'s loss*.") (quoting Op.1321). Intersil thus repeats the district court's error of reading language addressing one remedy (plaintiff's lost profits) to restrict another remedy (defendant's profits) that the mandate expressly instructed the district court to decide as factfinder in a second trial. That was legal error, because the mandate both remanded the remedy of defendant's profits and acknowledged that it does not require proof of plaintiff's losses. *See, e.g.*, Op.1321 ("The question in this case is whether disgorgement of the defendant's profits, considered on its own terms, *without proof that it was a sound measure of the plaintiff's harm*, was available at law[.]"); Op.1320 ("TAOS sought disgorgement of Intersil's profits as such, *not based on any evidence or argument that such profits soundly measured, and hence were a case-specific proxy for, TAOS's losses*[.]"). As a matter of law, TAOS was "not

required to prove lost profits" to recover the "profits, or advantages gained by [Intersil] in the use of the trade secret." TAOS.Br.115 (quoting *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536, 540 (5th Cir. 1974)); R&R37-40 (not disputing). This Court ordered a retrial of equitable disgorgement *because* it was distinct from the legal remedy of TAOS's losses. Op.1320-21. By *distinguishing* Intersil's gains from TAOS's losses, this Court was not *conflating* them.

Even so, Intersil claims that "the underlying basis for this Court's no-proxy-for-damages holding" was another, distinct "causation holding" that Intersil's "iPhone 3G design win was attributable to price, *not trade-secret misappropriation*." R&R38. According to Intersil, this Court "actually decided" the issue of "whether price *or* the photodiode structure was responsible for the iPhone 3G design win." R&R39.

That is not what this Court said. The mandate contains no zero-sum, categorical determination of "whether price ***or*** the

photodiode structure was responsible for the iPhone 3G design win." *Id.* Intersil points to a sentence identifying evidence "attribut[ing] Intersil's iPhone 3G win *primarily* to Intersil's significantly lower bid price, made possible by using the (lower cost) plastic packaging." Op.1321; R&R37. But that sentence only refutes Intersil's reading: Its use of the qualifier "primarily" expressly assumes that "lower bid price" was not the *sole* condition *responsible* for Intersil's iPhone design win. Indeed, under the district court's unchallenged findings of fact on remand, "price" was not even a sufficient condition, as Intersil would not have had any product to "price" in the first place but for its misuse of TAOS's photodiode structure. *See* TAOSBr.115 ("Intersil's 'lower bid price,' moreover, was irrelevant in the but-for world where, as the district court found, Intersil 'would not have developed an acceptable or competitive chip to show, sample, and market to Apple before March 2008' and thus 'would not have achieved any of the relevant design

wins with Apple,' including for the iPhone.") (quoting Appx116(¶50)); R&R37-40 (not disputing).

Intersil's own conception of the causation standard refutes its reading of the mandate. Intersil concedes that "TAOS was [] entitled to disgorgement of profits 'causally *related* to the wrongdoing at issue'"—not merely profits caused *exclusively* by the wrongdoing. R&R38 (quoting *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 413 (5th Cir. 2007)); *accord* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §51 cmt. f (AM. L. INST. 2011) ("[T]hat a profit is directly attributable to the underlying wrong … does not mean that the defendant's wrong is the exclusive or even the predominant source of the defendant's profit."); *id.* ("[I]t should be possible in almost every case to identify additional causes of the profit for

which the defendant is liable.”).[1] That Intersil’s iPhone design win could be “attributed … primarily” to lower pricing did not negate any causal relationship with Intersil’s misappropriation, any more than a generic drug company’s use of lower pricing to penetrate a market negates the original cause of copying a branded drug. This Court’s recognition that price played a significant role in Intersil’s iPhone design win was not a decision that the design win was “causally related” to price and *nothing else*. R&R38.

Intersil’s interpretation also contradicts the mandate’s remand instructions. This Court said that Intersil’s “lower bid price” was “made possible” by another feature of Intersil’s ALS products: “(lower cost) plastic packaging.” Op.1321. But if the Court was deciding for itself whether a single feature “was

[1] As Intersil notes at R&R22, the Restatement has been “quoted approvingly” by both this Court and the U.S. Supreme Court.

responsible for the iPhone 3G design win," as Intersil argues, R&R39, it would not have *declined* to "address Intersil's other challenges to the amount of the award on the issues of … proper *apportionment to the trade secret used in devices containing other features*." Op.1317 n.7. Indeed, the "other features" underscoring "Intersil's other challenges to the amount of the award" included "plastic packaging." Intersil Opening Br., 2016 WL 6743913, at *49-51 (arguing that the original disgorgement award "failed to exclude value legally obtained from non-secret information," including "plastic packaging").[2] The Court declined to address the impact of Intersil's lower-cost plastic packaging on the disgorgement amount and expressly instructed "the district court [to] consider" that and "similar issues" "[i]f [they] arise on remand." Op.1317 n.7. If that was not enough to

[2] Intersil has itself equated "disgorgement to profits *attributable* to misappropriation" with "*apportion*[*ing*] a misappropriating defendant's profits." R&R16.

"explicitly reserve[] or remand[]" an issue for the district court, *Engel*, 166 F.3d at 1383, it is difficult to imagine what is.

"In interpreting this court's mandate, 'both the letter and the spirit of the mandate must be considered.'" *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1374 (Fed. Cir. 2021). The district court erred in interpreting this Court's remarks about an entirely different remedy (lost profits) in the context of an entirely different question (TAOS's jury trial right) as a decision categorically excluding disgorgement of Intersil's iPhone design-win profits.

## II. The District Court's Misinterpretation Of The Mandate Reduced The Judgment By Over $10 Million.

Intersil contends that any error is "harmless" because "[e]ven had the district court misinterpreted the mandate," there was evidence "that the iPhone 3G design win was attributable to pricing[.]" R&R40. Once again, Intersil's reliance on pricing assumes a zero-sum causation standard for disgorgement that

simply does not exist. *See supra* §I. And none of the "evidence" cited by Intersil suggests that the district court would have excluded the iPhone design-win profits in any event based on lower-cost plastic packaging. Intersil's use of lower-cost plastic packaging for its other (iPod) design win did not prevent the district court from "reject[ing] [] [Intersil]'s apportionment arguments" and disgorging all profits from that design win. Appx111-117(¶¶45-52). Contrary to Intersil's mischaracterization, TAOS's former CEO did not categorically "agree[]" with Intersil counsel's assertion that "'Apple wasn't really worried or concerned about a perfect photopic' response, 'so long as the price is right.'" R&R40 (quoting Appx10738). Intersil omits his stated condition for agreement: "[a]s long as the *performance* is suitable in [Apple's] application." Appx10738(443:14-15). Under the district court's unchallenged findings, the performance of Intersil's pre-misappropriation ALS was not suitable in Apple's application. *See, e.g.*, Appx116(¶50)

(finding that without misappropriation, Intersil "would not have developed an *acceptable or competitive* chip to show, sample, and market to Apple before March 2008"); Appx108(¶39) (noting "[Intersil]'s experts agreed that 'there is no evidence to support the idea that Apple would have been interested in or purchased or designed in an [ALS] that had the photodiode structure of [Intersil's pre-misappropriation] EL7900'").

In the end, Intersil does not and cannot dispute that the district court's *unchallenged findings of fact* confirm it would have disgorged the iPhone design-win profits had it not misread the mandate to preclude them (TAOSBr.110-12, 117):

1. TAOS's "trade secret was of sufficient importance to disgorge [Intersil]'s profits associated with sales of the ISL29003." Appx112-114(¶¶48-49).

2. Intersil's "head-start period … end[ed] in March 2008" and "cover[ed] significant 'design wins' or supply contracts that [Intersil] achieved with the ISL29003." Appx111(¶43).

3. Those design wins occurring "before the end of the head-start period in March 2008" included both Intersil's "iPod design win" and "iPhone 3G design win." Appx116-118(¶¶51, 53).

4. "After deducting all available costs and expenses attributable to the ISL29003," Intersil "received $8,546,000 in profits from sales of the ISL29003 to Apple for use in the iPod Touch through March 2008," Appx117(¶52), and "received an additional $3,090,000 in profits from sales of the ISL29003 to Apple for use in the iPhone 3G." Appx118(¶53).

5. "[H]ad [Intersil] not misappropriated [TAOS]'s trade secret, [Intersil]: (i) would not have developed an acceptable or competitive chip to show, sample, and market to Apple before March 2008; (ii) would not have achieved any of the relevant design wins with Apple; and (iii) would not have received any of the profits those design wins produced." Appx116(¶50).

6. "[*I*]*nclusion* of these design wins in [TAOS]'s disgorgement remedy is warranted and equitable under the circumstances of this case." Appx111(¶43); *accord* Appx114(¶50) ("[T]he Court finds it necessary and equitable to *include* in [TAOS]'s disgorgement remedy sales arising from design wins achieved by [Intersil] during the head-start period.").

The only reason the final judgment did not include *both* design wins in TAOS's disgorgement remedy was the district court's erroneous belief that the mandate *excluded* the iPhone design win. Appx117(¶53); *see also* Appx10531(236:3-17) (ruling during trial that "*the Federal Circuit's opinion excludes* the iPhone 3G sales from the disgorgement remedy," while

permitting TAOS to "make offers of proof to the Court on these iPhone 3G sales and evidence" in order "to preserve the record"); Appx71 (ruling after trial that "[*i*]*n accordance with the Federal Circuit's mandate*, [TAOS] may not elect the iPhone 3G profits").

The district court's error reduced the judgment in three ways. First, the error excluded "an additional $3,090,000 in profits" from TAOS's disgorgement remedy based on the district court's undisputed calculations. Appx118(¶53); Appx71. Second, the error reduced exemplary damages by $6,180,000, because the district court found that "[TAOS] may elect to recover the maximum amount of exemplary damages permitted by law," which was limited to "'two times the amount of economic damages'" (despite the jury's award of more than seven times the amount of disgorgement). Appx72, Appx74 (quoting TEX. CIV. PRAC. & REM. CODE §41.008(b)(1)(A)). Third, the error reduced statutory prejudgment interest on the disgorgement award by

$2,017,812 as of the date of the district court's Rule 52 findings.[3] Appx12984-12985 (ruling that "[TAOS] is entitled to pre-judgment interest on the disgorgement award" at 5% simple interest accruing "[f]rom November 25, 2008"). In total, the district court's erroneous interpretation of the mandate reduced the final judgment by $11,287,812.

## III. There Is No Dispute That Modification Is More Appropriate Than Remand.

TAOS's principal brief argued that correction of the trade-secret judgment through modification is more appropriate than remand for at least five reasons. TAOSBr.117. TAOS requested that the judgment be modified to include (i) "disgorgement of Intersil's profits on the iPhone design win totaling $3,090,000," (ii) "exemplary damages … proportionally increased at twice the

[3] For purposes of its final judgment, the district court "elect[ed] to compute pre-judgment interest based on a period ending on December 14, 2021, the date the Court entered its Findings of Fact and Conclusions of Law." Appx12985(n.5).

amount of the disgorgement award under TEX. CIV. PRAC. & REM. CODE §41.008(b)," and (iii) "prejudgment interest … proportionally increased at 5% of the disgorgement award under TEX. FIN. CODE §304.104." TAOSBr.118.

Intersil offered no response. *See* R&R37-40. Accordingly, upon a finding that the district court's exclusion of the iPhone design-win profits was reversible error, there is no dispute as to both the appropriateness of modification and how the judgment should be modified. Indeed, because "there are firm guidelines establishing the basic elements of the award[s] and [they] can be computed with some degree of certainty as easily by the appellate court as by the trial judge, it would be mere wasted motion to remand the cause for new findings." *Simpson v. United States*, 322 F.2d 688, 693 (5th Cir. 1963).

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

The judgment should be affirmed, except insofar as the district court excluded Intersil's iPhone 3G design-win profits

from the disgorgement award and proportionally reduced the exemplary damages and prejudgment interest for trade secret misappropriation. Accordingly, TAOS respectfully requests that the Court modify those awards to account for inclusion of Intersil's iPhone design-win profits as follows:

| | Trade Secret Judgment | Requested Modification | Modified Judgment |
|---|---|---|---|
| Disgorgement | $8,546,000 | +$3,090,000 | $11,636,000 |
| Exemplary Damages | $17,092,000 | +$6,180,000 | $23,272,000 |
| Prejudgment Interest[4] | $5,580,655 | +$2,017,812 | $7,598,467 |
| **Total** | **$31,218,655** | **+$11,287,812** | **$42,506,467** |

[4] *See supra* n.3. As modified, the daily prejudgment interest amount is $1,593.97.

Respectfully submitted,

/s/ *Michael A. McCabe*
MICHAEL A. MCCABE
MICHAEL C. WILSON
ROBERT D. MCCUTCHEON
JORDAN C. STRAUSS
CHASE A. COBERN
MUNCK WILSON MANDALA LLP
12770 Coit Road, Suite 600
Dallas, Texas 75251
(972) 628-3600
mmccabe@munckwilson.com

*Counsel for Plaintiff-Cross Appellant*

August 25, 2023

**CERTIFICATE OF COMPLIANCE**

This brief complies with the relevant type-volume limitations and typeface requirements of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 2,847 words.

August 25, 2023

*/s/ Michael A. McCabe*
Michael A. McCabe