# United States Court of Appeals for the Federal Circuit

---

**AMS-OSRAM USA INC., FKA AMS SENSORS USA, INC., FKA TEXAS ADVANCED OPTOELECTRONIC SOLUTIONS, INC.**
*Plaintiff-Cross-Appellant*

**v.**

**RENESAS ELECTRONICS AMERICA, INC., FKA INTERSIL CORPORATION,**
*Defendant-Appellant*

---

2022-2185, 2022-2186

---

Appeals from the United States District Court for the Eastern District of Texas in No. 4:08-cv-00451-ALM, Judge Amos L. Mazzant, III.

---

Decided: April 4, 2025

---

CHASE COBERN, Munck Wilson Mandala, LLP, Dallas, TX, argued for plaintiff-cross-appellant. Also represented by MICHAEL A. MCCABE, ROBERT D. MCCUTCHEON, JORDAN C. STRAUSS, MICHAEL CRAIG WILSON.

SETH W. LLOYD, Morrison & Foerster LLP, Washington, DC, argued for defendant-appellant. Also represented by BRIAN ROBERT MATSUI, DANIEL P. MUINO; JOEL F. WACKS, San Francisco, CA.

---

Before TARANTO, SCHALL, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

In 2008, plaintiff ams-OSRAM USA Inc. (formerly named Texas Advanced Optoelectronic Solutions, Inc. and hereafter called "TAOS") sued Renesas Electronics America, Inc. (formerly named Intersil Corporation and hereafter called "Intersil") in a federal district court in Texas. TAOS asserted patent infringement, but that claim is no longer at issue. TAOS also asserted state-law claims, of which two remain in the case: misappropriation of trade secrets, and breach of a confidentiality agreement. In support of both claims, which relate to ambient-light sensors used in electronic products to adjust screen brightness in response to incident light, TAOS asserted that Intersil used information that TAOS revealed to it in confidence. Intersil's liability on those claims is no longer disputed, but issues about monetary remedies are now before us.

After a jury rendered a verdict for TAOS in 2015, the district court entered judgment that awarded money for trade-secret misappropriation but not for contract breach, deeming the jury's contract-breach award to be duplicative of the trade-secret award. In 2018, we affirmed Intersil's liability for trade-secret misappropriation on a more limited basis than had been presented to the jury. We therefore vacated the trade-secret monetary award and remanded, adding that (exemplary damages aside) what TAOS sought was disgorgement of profits that in this case had to be decided by the judge, not the jury. In light of our disposition of the trade-secret award, we also vacated the judgment that had denied an award for contract breach as duplicative of the (originally broader) trade-secret award. We remanded for appropriate proceedings. *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics*

*America, Inc.*, 895 F.3d 1304, 1332 (Fed. Cir. 2018) (*TAOS 2018*).

On remand, the case narrowed to the trade-secret and contract issues, and the district court held additional proceedings, including a new jury trial, that led to a jury verdict and to findings made by the district judge. Regarding TAOS's remedy for Intersil's misappropriation of TAOS's trade secret, the resulting monetary award had two parts: (1) a sum, determined by the district judge, representing disgorgement of Intersil's profits from certain sales of its ISL29003 product; and (2) exemplary damages of double that sum, arrived at by applying a Texas statute to reduce the higher amount of exemplary damages the jury found warranted. Regarding TAOS's remedy for Intersil's breach of contract, the resulting monetary award, based on the jury's verdict and TAOS's election of remedies, was a reasonable royalty on Intersil's sales of products other than the ISL29003. As relevant here, TAOS also was awarded prejudgment interest on both the just-noted awards and attorneys' fees for its work on the contract claim.

Both parties appeal. We affirm the monetary awards, with one exception. We agree with Intersil that the district court erred in one aspect of its disgorgement analysis, but that aspect by itself ends up making no difference to the disgorgement award, given that we reject all other challenges to the appealed rulings on the trade-secret and contract awards, including Intersil's as well as TAOS's challenges. We also affirm the award of attorneys' fees. But we find error in the district court's analysis of prejudgment interest, and we remand on that issue.

# I

## A

In June 2004, TAOS and Intersil had discussions about a possible merger, discussions covered by a confidentiality agreement having an expiration date of June 3, 2007. J.A.

14922–25. In due-diligence work as part of the discussions, TAOS gave Intersil confidential information about TAOS's ambient-light-sensor technology. Merger discussions ended in August, and Intersil quickly began using some of the confidential information to develop its own competing products, including the ISL29003 and other (related) so-called "Primary Products" as well as several other "Derivative Products." *See*, *e.g.*, *TAOS 2018*, at 1309–10, 1316; J.A. 48, 82–83, 15075–83.

TAOS publicly released a product incorporating previously secret information in early 2005 (we may use February 28, 2005, if precision is needed, according to Intersil at oral argument in this court). *See TAOS 2018*, at 1317; J.A. 109; Oral Arg. at 1:52–2:02, available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2185_02032025.mp3. Intersil, for its part, became an approved vendor of the ISL29003 for Apple's iPod Touch in September 2006, J.A. 15324, and for Apple's iPhone 3G between January and March 2008 (after relevant 3G-specific sales efforts started in August 2007), J.A. 11699–11701; *TAOS 2018*, at 1310. Intersil sold substantial volumes of such products to Apple following those approvals (sometimes called "design wins" in this case). *See* J.A. 84–85, 11772–82, 12017–18, 15814–15, 15870–71.

B

In November 2008, TAOS sued Intersil in federal district court for patent infringement and for several state-law wrongs, *i.e.*, trade-secret misappropriation, breach of contract, and tortious interference with prospective business relations. *TAOS 2018*, at 1308. "[A] jury returned a verdict for TAOS on all claims" and awarded various sums as monetary relief, including (relevant now) disgorgement of profits ($48,783,007) and exemplary damages ($10 million) on the trade-secret claim and reasonable-royalty damages ($12 million) on the contract claim. *Id.* at 1310; *see* Verdict of the Jury at 1–3, *Texas Advanced Optoelectronic*

*Solutions, Inc. v. Intersil Corp.*, No. 4:08-CV-00451 (E.D. Tex. Mar. 6, 2015), ECF No. 511 (*2015 Jury Verdict*).[1] The district court subsequently eliminated the contract damages from the final judgment as duplicative of the trade-secret award. *See TAOS 2018,* at 1311.

In the appeal that we decided in 2018, we addressed several issues, of which the trade-secret and contract issues are relevant now. We affirmed the judgment of liability for trade-secret misappropriation, though on a narrower basis than had been presented to the jury. *Id.* at 1311–17. The narrowing necessitated a remand for redetermination of the proper monetary award for that wrong. *Id.* at 1317. Such a redetermination was also needed to ensure that findings would be made of two facts: (1) the time at which the trade secret became "properly accessible to Intersil" and (2) the length of "any head-start period" within which Intersil's acts should be found tainted so as to erase the "'head start' on the competition" from Intersil's jumping the gun in using the secret information, "which 'depend[s] upon the facts of each particular case.'" *Id.* at 1317–18 (quoting *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 777–78 (Tex. 1958) (alteration in original)). We noted Intersil's assertion of a 22-month head-start period and TAOS's assertion to the jury of a "similar" period. *Id.* at 1318. We further held, in agreement with Intersil, that TAOS's request for a trade-secret award consisting of disgorgement of Intersil's profits had to be made by the district judge (not a jury) because, in this case, the money sought was an equitable remedy of disgorgement of profits as such (not as a measurement of TAOS's losses). *Id.* at 1318–26; *see id.* at 1319 (proceeding on agreed-on premise

---

[1] We hereafter refer to Case No. 4:08-CV-00451 (E.D. Tex.) as *TAOS D. Ct.*, identifying documents entered on the docket by date and Electronic Case Filing (ECF) number.

that if no jury right for the remedy existed, the remedy had to be decided by the judge).

We briefly addressed the exemplary-damages award for trade-secret misappropriation. *Id.* at 1318. In a one-paragraph argument on the point, Intersil had submitted that, if we vacated the disgorgement award, we "should also 'reverse and remand the trial court's award of exemplary damages,' because those damages were likely predicated on the amount of the actual damages." Corrected Brief for Defendant-Appellant Intersil Corp., *TAOS 2018*, Fed. Cir. No. 16-2121, ECF No. 33, 2016 WL 6743913, at *57; *id.* at *57–58 (stressing the "obligation to give consideration to the ratio between exemplary and actual damages" (quoting *McDonald v. Bennett*, 674 F.2d 1080, 1092 (5th Cir. 1982))). Intersil did not argue that the equitable character of the disgorgement remedy precluded any award of exemplary damages for trade-secret misappropriation here. Nor did it argue that we should vacate the jury's finding of the premise for an exemplary-damages award—that "the Defendant's misappropriation of the Plaintiff's trade secrets resulted from the Defendant's fraud, malice, or gross negligence." *2015 Jury Verdict*, at 3 (Answer to Question No. 5). TAOS did not dispute Intersil's limited submission, and we adopted the agreed-on position. *TAOS 2018*, at 1318.

Finally, with respect to the contract claim, we vacated the district court's determination that the contract award was duplicative of the disgorgement award (given the vacatur of the disgorgement award) and remanded for the district court to determine how to proceed on the contract claim. *Id.* at 1332.

C

On remand, the district court allowed TAOS to argue that it was entitled to "re-elect its remedy," and the case was narrowed to the trade-secret and contract claims, which required damages to be retried. *Texas Advanced*

*Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, No. 4:08-CV-00451, 2020 WL 1495230, at *1, *3 n.2 (E.D. Tex. Mar. 27, 2020). A jury trial was held in April 2021. The jury provided an advisory verdict on disgorgement of profits for trade-secret misappropriation (to be determined by the district judge), finding that the trade secret did not become properly accessible to Intersil until January 30, 2006; the head-start period was 26 months; and a disgorgement award of $8,546,000, for Intersil's sales of the ISL29003, was warranted. Verdict of the Jury at 4, *TAOS D. Ct.* (Apr. 16, 2021), ECF No. 824. The jury also awarded TAOS $64,000,000 in exemplary damages for Intersil's "fraud, malice, or gross negligence in misappropriating [TAOS]'s trade secret." *Id.* at 5. For breach of contract, the jury awarded TAOS reasonable-royalty damages on two sets of Intersil products: $6,701,743 for Primary Products (which include the ISL29003) and $6,637,693 for Derivative Products (which do not include the ISL29003). *Id.* at 2, 6.

On August 12, 2021, the district court ruled on TAOS's options in electing remedies. Memorandum Opinion and Order at 17–22, *TAOS D. Ct.* (Aug. 12, 2021), ECF No. 853 (*Election of Remedies Decision*). The court allowed TAOS to "elect the $8,546,000 in disgorged profits awarded by the jury" for ISL29003 sales (other than for the iPhone 3G), if that award stood after the district judge made his own findings, *id.* at 18–19, while ruling that exemplary damages would be limited to twice the disgorgement sum, *i.e.*, to $17,092,000, in accordance with a Texas statute, *id.* at 19–21 (applying TEX. CIV. PRAC. & REM. CODE ANN. § 41.008, which places certain limits on exemplary damages). For contract damages, the court ruled that TAOS could "elect to recover the entire royalty award for the Derivative Products" (which do not include the ISL29003) but any elected royalty for the Primary Products had to exclude the ISL29003. *Id.* at 22; *see id.* at 10–17.

On December 14, 2021, the district court entered findings of fact and conclusions of law regarding TAOS's disgorgement award. Findings of Fact and Conclusions of Law, *TAOS D. Ct.* (Dec. 14, 2021), ECF No. 855 (*Disgorgement Determination*). Like the jury, the district court found that the trade secret first became properly accessible to Intersil in January 2006, when Intersil successfully reverse-engineered the trade secret from TAOS's TSL2560 product, which was available to the public by February 2005. *Id.* at 21–26. Like the jury, the district court next found that the head-start period—"how long it would have taken [Intersil] to realistically compete in the [ambient light sensor] market without the benefit of [TAOS]'s technology"—was 26 months. *Id.* at 30, *see also id.* at 30–36. Based on those determinations, the district court found the proper disgorgement award to be $8,546,000, representing profits Intersil earned from sales of ISL29003 units to Apple for use in the iPod Touch (first and second generations), all of which depended on Intersil's "design win" in September 2006, which was before the 26 months from January 2006 elapsed (in March 2008). *Id.* at 36–43. The court rejected TAOS's request to include Intersil's profits from sales of the ISL29003 to Apple for use in the iPhone 3G in the disgorgement award. *Id.* at 42–43.

The district court entered its final judgment on March 7, 2022. Final Judgment at 1–2, *TAOS D. Ct.* (Mar. 7, 2022), ECF No. 870 (*Final Judgment*). The trade-secret award consisted of $8,546,000 for disgorgement and $17,092,000 in exemplary damages, and the contract award consisted of reasonable-royalty damages of $6,637,693 and $613,014, respectively, from Derivative Product sales (none of which were ISL29003 sales) and from the non-ISL29003 portion of Primary Product sales. *Id.* The court added an award of prejudgment interest of $5,580,655.07 and $9,469,621.99 for the disgorgement and reasonable-royalty awards, respectively. *Id.* In calculating those interest amounts, the court relied on its conclusions

that the entitlement to prejudgment interest began accruing on November 25, 2008, when TAOS filed suit, and ran until December 14, 2021, when the court entered its findings of fact and conclusions of law. *See* Memorandum Opinion and Order at 8–9, 9 n.5, 12 & n.6, *TAOS D. Ct.* (Mar. 7, 2022), ECF No. 869 (*Prejudgment Interest Determination*).

The court subsequently denied motions to amend the findings, grant a new trial, or grant judgment as a matter of law on July 25, 2022. Memorandum Opinion and Order at 1, *TAOS D. Ct.* (July 25, 2022), ECF No. 915 (jury-decision issues); Memorandum Opinion and Order at 1, *TAOS D. Ct.* (July 25, 2022), ECF No. 916 (judge-decision issues). And on August 10, 2022, the court awarded TAOS $3,908,811.60 in attorneys' fees arising from work on the contract claim, concluding that the contract, governed by California law, J.A. 14924 ¶ 12, provided for such fees. Memorandum Opinion and Order at 5–9, 12–17, 22, *TAOS D. Ct.* (Aug. 10, 2022), ECF No. 917.

D

The parties timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1). *See Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1190 (Fed. Cir. 2004) (holding that this court "retain[s] appellate jurisdiction over all pendent claims in the complaint" even after the patent claims have been dismissed with prejudice).

Liability for trade-secret misappropriation and breach of contract is not in dispute. Intersil presents a host of challenges to the amounts of money awarded. TAOS challenges the denial of disgorgement for profits from Intersil's sales of devices for use in Apple's iPhone 3G.

For issues not unique to patent law, we apply the law of the regional circuit for the district court, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66 (Fed. Cir. 2012), which here is the Fifth Circuit. The Fifth Circuit

reviews a district court's ruling on the interpretation of state law de novo. *American Reliable Insurance Co. v. Navratil*, 445 F.3d 402, 404 (5th Cir. 2006). We apply Fifth Circuit law to procedural issues, and we apply the relevant state law to substantive issues. An election of remedies is a choice between substantive rights, and it is governed here by Texas state law. *United States Fidelity & Guaranty Co. v. First National Bank in Dallas, Texas*, 172 F.2d 258, 262 (5th Cir. 1949). The Fifth Circuit reviews a jury's factual findings for substantial-evidence support. *OneBeacon Insurance Co. v. T. Wade Welch & Associates*, 841 F.3d 669, 675–76 (5th Cir. 2016). The contract at issue states that it is governed by California law. J.A. 14924 ¶ 12.

## II

We first consider the awards for trade-secret misappropriation. We apply Texas law to these awards. *TAOS 2018*, at 1311–12. We review the disgorgement award "only for an abuse of discretion." *Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.*, 257 F.3d 461, 469 (5th Cir. 2001).

### A

The district court found that TAOS's trade secret became properly accessible only in January 2006, when Intersil successfully reverse-engineered the trade secret from TAOS's product. *Disgorgement Determination*, at 21–26. Intersil challenges that finding as resting on legal error, arguing that the trade secret first became accessible to it when it *could have* reverse-engineered the trade secret, by February 28, 2005, after TAOS's release of the TSL2560. Intersil's Opening Br. at 21–27; Oral Arg. at 1:52–2:02. We agree with Intersil and reverse the district court's finding of the proper accessibility date.

In response to Intersil's argument that "proper accessibility occurred as soon as anyone hypothetically could have reverse-engineered the TSL2560," the district court ruled

that "the relevant inquiry for proper accessibility is what the misappropriator did," rather than "what the misappropriator or other parties could have done." *Disgorgement Determination*, at 24–25 (citing *K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*, 314 S.W.2d 782, 788 (Tex. 1958)). That ruling, we conclude, is inconsistent with governing law.

"Under Texas law, information that is generally known *or readily available by independent investigation* is not secret for purposes of trade secrecy." *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.,* 637 F.3d 604, 612 (5th Cir. 2011) (emphasis added); *Zoecon Industries v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (similar); *Spicer v. Tacito & Associates, Inc.*, 783 S.W.2d 220, 222 (Tex. App. 1989) (similar). "Information cannot be the subject of a trade secret if it is *readily ascertainable* without engaging in tortious behavior." *Carson Products Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979) (emphasis added); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 155 (1989) (explaining that the public is "free to discover and exploit the trade secret *through reverse engineering* of products in the public domain or by independent creation" (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 490 (1974) (emphasis added))). Under those standards, instant discovery through naked-eye viewing is not required. The practical focus of the inquiry reflects the need to ensure that a trade-secret remedy is tailored to preventing or negating the unfair advantage derived from improper acquisition. *Compare*, *e.g.*, *Halliburton Energy Services, Inc. v. Axis Technologies, LLC*, 444 S.W.3d 251, 257–60 (Tex. App. 2014) (granting a permanent injunction barring a party's use of a trade secret because there was no evidence that the party could have developed the trade secret "without extensive and costly research and experimentation"), *with Research Equipment Co. v. C. H. Galloway & Scientific Cages, Inc.*, 485 S.W.2d 953, 956 (Tex. Civ. App. 1972)

(limiting injunction where the trade secret designs were "based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced craftsman that might see [a product containing the design]" and the products "were openly exhibited and displayed at trade shows conducted for prospective purchasers, and copies of drawings and plans were often furnished by Plaintiff to prospective purchasers without any restrictions on their use").

Here, the evidence makes clear that Intersil, through proper and straightforward means, could have accessed TAOS's trade secret by the end of February 2005. It is undisputed that TAOS released the TSL2560 to the public at least by January 2005, J.A. 11186–87, 11863–64, and that this product contained TAOS's trade secret, J.A. 10851–54, 11022. Moreover, although there is evidence that the trade secret would *not* have been instantly understood by naked-eye inspection, J.A. 12185 (Intersil's witness admitting that reverse-engineering was necessary to access the trade secret); J.A. 11468–69 (TAOS's witness explaining the need to conduct a "forensic analysis" to discover the trade secret), the evidence is clear that reverse-engineering a product is a common, pervasive industry practice that could have been done in roughly a week, J.A. 10850, J.A. 10912–13 (TAOS's former CEO explaining that reverse-engineering a competitor's product is so common that it has a name: "design by Polaroid"); J.A. 11647 (TAOS's expert agreeing that Intersil could have reverse-engineered the TSL2560 in six days). In these circumstances, and with the parties framing the dispute as either February 2005 or January 2006, the record establishes February 2005 as the correct answer to the correct legal question—February 28, 2005, if more precision is needed. *See* Oral Arg. at 1:52–2:02.

B

The district court next made the needed finding about the proper length of a "head-start period"—the period of

time "it would have taken Intersil, after Intersil's permissible discovery of the photodiode structure, to recreate that structure in its own products." *TAOS 2018*, at 1317 (citing *Research Equipment*, 485 S.W.2d at 956). The district court found 26 months to be the proper period. *Disgorgement Determination*, at 30–36. Intersil now argues for a duration of at most 7 months, Intersil's Opening Br. at 34–37, having suggested 22 months during the previous appeal, *TAOS 2018*, at 1318. TAOS defends the district court's determination. TAOS's Response Br. at 44–57. We affirm the district court's determination.

The inquiry into a proper "head-start period" is a practical inquiry focused on ensuring that one who prematurely used secret information gains no unfair advantage in the competitive marketplace—no "'head start' on the competition"—from that premature use. *See TAOS 2018*, at 1317–18. The Texas Supreme Court long ago made clear that the period to be identified is the period of the misappropriator's "marketing advantage or head start as compared to the [plaintiff] or any manufacturer or processor" who properly got the information. *Hyde*, 314 S.W.2d at 773; *see id.* at 778 (stressing focus on "economic equality"); *see also Halliburton Energy*, 444 S.W.3d at 257–60 (explaining that a competitive advantage is to be evaluated in the context of the industry and how a competitor could have properly obtained the advantage); *Garth v. Staktek Corp.*, 876 S.W.2d 545, 549 (Tex. App. 1994); *Elcor Chemical Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 212 (Tex. Civ. App. 1973); *Bryan v. Kershaw*, 366 F.2d 497, 500 (5th Cir. 1966). The inquiry in this context reflects the "fundamental principle of corrective remedies that is used throughout the law": Restore the parties to the position they would have occupied in the absence of the wrong. *Pirkl v. Wilkie*, 906 F.3d 1371, 1378 (Fed. Cir. 2018) (citing cases); *see Reaugh v. McCollum Exploration Co.*, 163 S.W.2d 620, 621 (Tex. 1942); *Southwestern Energy Production Co. v. Berry-Helfand*, 491 S.W.3d 699, 711–12 (Tex. 2016); *University Computing Co. v.*

*Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974). The needed determination "depend[s] upon the facts of each particular case." *Hyde*, 314 S.W.2d at 778; *see TAOS 2018*, at 1318; *Southwestern Energy*, 491 S.W.3d at 710–12.

We see no clear error in the district court's finding that the relevant duration was 26 months. The court found that Intersil provided no evidence of "how long it would have taken [Intersil] to realistically compete in the [ambient light sensor] market without the benefit of [TAOS]'s technology." *Disgorgement Determination*, at 30–31 (citing J.A. 12153–54, 12199, 12445, 12436 (testimony of Intersil's experts)). The court found that 26 months was an appropriate duration, citing documentary and testimonial evidence, *id.* at 31–35, which showed, among other things, that Intersil took 26 months after its misappropriation to develop a realistically competitive product and that it "lack[ed] . . . relative experience in [ambient light sensor] design and development at the time of misappropriation" and "lagged far behind the competition at the time of misappropriation," *id.* at 31–32, 34. The district court's finding of the time period within which Intersil's use of the trade secret should be viewed as still tainted—26 months past the date of accessibility—was not clearly erroneous.

C

Given our determination that the proper accessibility date is February 28, 2005, and our affirmance of the district court's determination that it would have taken 26 months for Intersil to develop a competitive product, the "head-start" period ended on April 28, 2007. Thus, sales that resulted from Intersil's actions before that date are properly treated as wrongfully made. Three issues are raised about the application of that conclusion to the monetary award for disgorgement of Intersil's profits. Addressing those issues, we leave the district court's disgorgement award standing.

First, Intersil argues that the district court erred in including the profits associated with the Apple iPod Touch "design win"—here, the necessary approval as a potential vendor of a product—that Intersil obtained for its ISL29003 in September 2006, *i.e.*, before April 28, 2007. Intersil's Opening Br. at 37–40 (citing J.A. 11663 ("[A] design win says you passed the criteria for being included as a vendor of a product.")). Intersil contends that being approved as a vendor does not guarantee sales, so sales of product units that occurred after April 28, 2007, but grew out of the earlier design win should not have been included in the disgorgement award. *Id*. We reject this contention.

The district court found that Apple's approval of Intersil as an iPod Touch vendor in September 2006 was a necessary precondition to all the sales for the iPod Touch at issue. *Disgorgement Determination*, at 39–41. That finding is not clearly erroneous. The district court identified ample evidence that, but for Intersil's misappropriation, Apple would not have approved Intersil's product for use in the iPod Touch in September 2006, and the sales Intersil later made to Apple for that purpose would not have occurred. *Id.*; *see*, *e.g.*, J.A. 12448 (Intersil's damages expert agreeing that "if Intersil doesn't have a chip to show to Apple, to sample to Apple, and to market, they can never get the design win"); J.A. 11773 (TAOS's expert explaining that Intersil "wouldn't have been able to get the [iPod Touch] design win without the misappropriation because they wouldn't have had a product"); J.A. 11776. Intersil has not shown that the evidence required the court to find that Intersil would have made the at-issue sales even if it did not get the September 2006 approval. We therefore affirm the inclusion in the disgorgement award of all profits attributable to Intersil's sales of ISL29003 units to Apple for use in the iPod Touch.

Second, and relatedly, Intersil argues that the district court should have determined what portion of Intersil's profits are attributable to trade-secret misappropriation

rather than ordering disgorgement of the entirety of Intersil's ISL29003 profits from sales to Apple for use in the iPod Touch. Intersil's Opening Br. at 40–41. The court, recognizing that it needed to make a finding about attribution, *Disgorgement Determination*, at 36–37, found that the profits on all sales of ISL29003 units for this purpose were properly attributed to the misappropriation actions Intersil took before April 28, 2007, specifically the inclusion in the offering (leading to the September 2006 approval) of the trade secret, *see id.* at 37–41. That finding is not clearly erroneous in light of the evidence. *See*, *e.g.*, J.A. 10731 (explaining that TAOS's 1:1 interleaved photodiode structure, *i.e.*, the trade secret, was "the entire value proposition" for the TSL2560 product family); J.A. 11067 (TAOS's chief technical officer noting that the "photodiode itself was the most important change because . . . customers wanted it for an ambient light sensor"); J.A. 14929 (Intersil's confirmation of the value of the trade secret in its internal documents); *see also TAOS 2018*, at 1316 ("Both parties' experts testified that there was no evidence of Intersil's independent design of that structure."). Intersil has shown no basis to set aside this finding for factual error or for legal error under any cited governing Texas law.

Our conclusions on the above two challenges by Intersil exhaust Intersil's arguments against the $8,546,000 disgorgement award. The district court found $8,546,000 to be the amount of profits on sales of the ISL29003 for the iPod Touch traceable to the September 2006 approval by Apple. *Disgorgement Determination*, at 41–42. Intersil makes no arguments against that award other than the two arguments just discussed. We therefore reject Intersil's challenges to that award.

The third issue raised regarding the disgorgement award involves TAOS's contention that the award is too small. Specifically, in its cross-appeal, TAOS argues that the district court was wrong not to include in the award Intersil's profits from sales of the ISL29003 to Apple for use

in the iPhone 3G. TAOS's Response Br. at 108–18. The crux of TAOS's argument is that Intersil achieved the iPhone 3G "design win" before March 2008, which was the end-of-head-start date used by the district court based on its finding of a secret-accessibility date of January 2006 (to which 26 months were added). *See id*. But we have held above that the proper accessibility date was February 28, 2005, which, with 26 months added, brings the end of the head-start period to April 28, 2007. *See supra* § II.A, II.B. On appeal, TAOS does not argue that any events (*i.e.*, a "design win") that were necessary preconditions for Intersil securing sales for the iPhone 3G occurred before April 28, 2007, presumably reflecting the strong evidence that the key events for the iPhone 3G sales occurred only from August 2007 to March 2008. *See*, *e.g.*, J.A. 11237, 11701, 12014. We therefore reject the cross-appeal and affirm the disgorgement award made by the district court.

D

The second jury (on remand) determined the amount of exemplary damages, and it did so based on an instruction informing the jury that Intersil had already been found to have committed trade-secret misappropriation with malice, fraud, or gross negligence, *i.e.*, the kind of conduct that would allow an exemplary-damages award, but that the jury was now to decide whether to make any such award and, if so, in what amount. Final Jury Instructions at 7–8, 12–13, *TAOS D. Ct.* (Apr. 15, 2021), ECF No. 822. After the jury awarded $64 million, the district court ruled that the amount had to be limited to $17,092,000 (twice the disgorgement award), and that was the amount awarded. *Final Judgment*, at 1–2, *supra* § I.C. Intersil presents three challenges to the award of exemplary damages. We reject the challenges.

Intersil's main argument is that a Texas statute prohibits any exemplary-damages award based on a claim for which the only other monetary award is the equitable

remedy of disgorgement. Intersil's Opening Br. at 42–44 (relying on TEX. CIV. PRAC. & REM. CODE ANN. § 41.008); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004 (generally allowing an award of exemplary damages "only if damages other than nominal damages are awarded"). We reject this argument. We conclude that, because Intersil could have made this argument that the statute bars exemplary damages in the first appeal, but did not, it cannot make the argument now.

We have ruled: "An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived. Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). The Fifth Circuit, for its part, "instructs district courts to faithfully apply the 'waiver' doctrine by discerning whether an issue raised after a remand is one that could have been, but was not, raised during the original appeal," for such issues are "forfeited and may not be revisited by the district court on remand." *United States v. Stanford*, 883 F.3d 500, 514 (5th Cir. 2018) (citing *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011)). Those principles, which amount to the same thing in the remand context here, serve important systemic interests—among them, narrowing the scope of further needed litigation and, perhaps, clarifying relevant consequences of proffered resolutions of other issues at the time of the first appeal and clarifying choices to be made on remand. *See*, *e.g.*, *Engel*, 166 F.3d at 1382–83.

Those principles apply here. When Intersil first appealed this case before us, it argued that the remedy TAOS was seeking for trade-secret misappropriation, namely, disgorgement of Intersil's profits, was an equitable remedy that had to be decided by the district judge, not the jury, as one of the grounds for requiring a remand for a new trial

on the trade-secret remedy. Intersil also urged vacatur of the exemplary-damages award if we ordered a new trial on disgorgement, citing the relationship of the amounts of exemplary and non-exemplary awards. *See supra* § I.B. We granted that request. *TAOS 2018*, at 1318; *id.* at 1332 (describing remand). Intersil could have argued that, if we agreed with it on the equitable character of the disgorgement remedy, exemplary damages were prohibited and the request for exemplary damages therefore should not be part of the remand. That argument was ripe, and had it been made, our accepting it would have changed the scope of our judgment, narrowing the remand and, therefore, the disputed stakes in further litigation. Intersil did not make the argument. We hold that it therefore lost the right to make the argument on remand and in this second appeal.

Intersil's second argument about exemplary damages is that the amount of exemplary damages had to be decided by the district judge, not a jury. Intersil's Opening Br. at 44. Intersil asserts that exemplary damages "'cannot be tried in isolation' from the underlying cause of action," *id.* at 44 (quoting *Lanier v. Sallas*, 777 F.2d 321, 326 (5th Cir. 1985)), and that "once this Court held that disgorgement was an issue for the judge, exemplary damages became an issue for the judge too," *id.* Those assertions, however, mistakenly conflate the underlying claim of trade-secret misappropriation with the remedy of disgorgement. We held in the first appeal that, on certain premises presented there, the particular remedy presented a judge issue, even though it was undisputed that the underlying issue of liability on the claim of trade-secret misappropriation was properly decided by the jury. *TAOS 2018*, at 1318–26; *see supra* § I.B. That remedy-specific holding does not extend to the distinct remedy of exemplary damages, and Intersil identifies no precedent or law supporting judge-only treatment of exemplary damages just because a different remedy must be tried by a judge. *See Curtis v. Loether*, 415 U.S. 189, 197–98 (1974) (characterizing exemplary

damages as a legal remedy). *Lanier* did not involve a judge-jury issue; it held that a plaintiff's acceptance of a remittitur on compensatory damages precluded the plaintiff from appealing not just the award of compensatory damages award but also the denial of punitive damages. 777 F.2d at 325–26.

Intersil's final argument about exemplary damages is that the issues of liability for exemplary damages and the amount of such damages are "too intertwined to be decided by different factfinders" (here, the first jury and the second). Intersil's Opening Br. at 44–45. For this argument, Intersil cites only authority for the principle that sometimes a limited retrial (of some among several issues previously tried) is unjust, a principle that depends heavily on the facts of particular cases. *Id.* (citing *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (outside retrial setting, applying related principle requiring caution about bifurcation of trials to reverse a class certification)). Here, Intersil has not established injustice. As recited above, Intersil, in the first appeal, sought vacatur of the first jury's determination of the amount of exemplary damages, its rationale concerning only the relation of exemplary-damages amounts and disgorgement amounts; it did not seek vacatur of the first jury's determination of the premise for some award of exemplary damages (fraud, malice, or gross negligence). That choice constitutes an agreement to separate trials for liability for exemplary damages and the amount of any such damages, and in any event, it is confirmation that such separation is not unjust. Moreover, the second jury was expressly allowed to find that *no* exemplary damages should be awarded, and Intersil has not argued, let alone shown, that it was improperly restricted in the second trial from presenting evidence to persuade the jury that the wrong was such that exemplary damages should be low or even zero. In these circumstances, we reject Intersil's challenge to the exemplary-damages award for trade-secret misappropriation.

III

Intersil presents several challenges to the award of reasonable-royalty damages for breach of contract. Intersil first argues that TAOS may not recover on both the trade-secret and contract claims because such recovery would be a double recovery for one injury. Intersil's Opening Br. at 45–52. Intersil next argues that TAOS may not recover on its contract claim because TAOS failed to prove that it was harmed by the adjudicated breach. *Id.* at 52–53. Intersil then challenges two aspects of the contract award: the amount awarded for sales of Derivative Products, which do not include TAOS's trade secret, *id.* at 54–55, and the 10-year duration of the hypothetical-negotiation royalty proposed in TAOS's evidence, *id.* at 55–57. We reject these arguments.

A

Intersil argues that TAOS's trade-secret and contract claims arose from the same indivisible injury—Intersil's use of TAOS's confidential information, including trade secrets, to develop competing products—and that allowing TAOS to recover under both claims would therefore constitute an impermissible double recovery. *Id.* at 45–47 (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303–04 (Tex. 2006) (limiting plaintiffs to "one recovery for one injury")). We disagree.

The district court found that the recoveries on the two claims are for non-overlapping sets of units sold by Intersil. "[TAOS]'s misappropriation damages for ISL29003 sales are separate wrongs from [TAOS]'s breach damages for other product sales." *Election of Remedies Decision*, at 11. We have before us no substantial challenge to the finding of no overlapping sales. It follows that there is no single injury and no double recovery, because "the theories of liability arise from two separate and distinct injuries"—in this case, sales of units of ISL29003s and sales of units of other products—and "there has been a separate and

distinct finding of damages on both theories of liability." *Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72, 80 (Tex. App. 1998); *cf. Aero Products International, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1018–19 (Fed. Cir. 2006) (prohibiting recovery of both a royalty award and a disgorgement award because they were "based on the *same* sales of the *same* accused devices" (emphases added)). TAOS is entitled to recover on each of the two theories for distinct sales by Intersil.

B

Intersil next contends that TAOS has not proven "that the 'breach was a substantial factor in causing the damages.'" Intersil's Opening Br. at 52 (quoting *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, 249 Cal. Rptr. 3d 122, 144 (Ct. App. 2019)). Its argument on this point is that the jury could not reasonably find that TAOS met the California-law requirement of showing that reasonable-royalty damages were reasonably foreseeable at the time of contracting. *Id.* at 53 (citing *Behnke v. State Farm General Insurance Co.*, 127 Cal. Rptr. 3d 372, 391 (Ct. App. 2011)). We disagree.

The jury's finding is reasonable and therefore supported by substantial evidence. In substance, the finding is that TAOS, which took the trouble of protecting its confidential information by the contract at issue, had a "reasonable expectation" of compensation if Intersil used such information in breach of the contract and a reasonable royalty reflects "the license fee [Intersil] would have paid had it not breached the agreement." *Celeritas Technologies, Ltd. v. Rockwell International Corp.*, 150 F.3d 1354, 1359 (Fed. Cir. 1998) (applying California contract law); *see also AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (A reasonable royalty theory of damages "seeks to compensate the [plaintiff] not for lost sales caused by the infringement, but for its lost opportunity to obtain a reasonable royalty that the [defendant] would have been

willing to pay if it had been barred from infringing."). As TAOS would have reasonably expected to receive compensation for Intersil's use of its confidential information, we see no error in an award of reasonable-royalty damages.

C

Intersil presents two challenges to the amount of the royalty award. We conclude that neither is meritorious.

First: Intersil contends that the jury could not reasonably have included Derivative Products in the royalty award because some or many of those products do not physically incorporate TAOS's trade-secret structure of "a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio." *See* Intersil's Opening Br. at 54–55 (quoting *TAOS 2018*, at 1313, and citing J.A. 11680–81 (explaining that "a Derivative Product does not have to instantiate the exact trade secret"), J.A. 12118–19 (stating that some of Intersil's products do not use a "1:1 ratio" of shielded and unshielded wells or an "interleaved" structure, in accordance with the trade secret), and J.A. 11602–03 (stating that Intersil's products do not use a shielded diode "as required by the trade secret")). But that contention relies on an unduly constricted view of the claim for breach of the confidentiality agreement. Under California law, a plaintiff may recover for the defendant's breach of a confidentiality agreement not only if the defendant wholly incorporated the plaintiff's contractually protected information into its own products but also if the defendant used the plaintiff's confidential information in the development or implementation of its own products. *See Celeritas*, 150 F.3d at 1358 (applying California contract law); *cf. SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1349 (Fed. Cir. 2020) (relying on breach of confidentiality agreement under Massachusetts law where the defendant's "development of the accused products and entry into the relevant markets were aided and accelerated by its improper use of [the plaintiff's] confidential information").

Here, the jury's finding that Intersil improperly used TAOS's confidential information in its development of the Derivative Products is supported by substantial evidence. The jury heard testimony that several of the Derivative Products "have the same sensor structure" as the ISL29003. J.A. 12011 (Intersil's employee testimony); J.A. 15901 (Intersil's internal document). And although the Derivative Products do not wholly incorporate TAOS's trade-secret structure, there is record evidence that Intersil used TAOS's confidential information to develop those products. *See*, *e.g.*, J.A. 15075 (Intersil's internal email describing a product in which "[t]he ratio of the light and dark current cells will be one"); J.A. 12235 (Intersil's witness explaining that one Derivative Product's structure is "interleaved in a ratio of 16:16," which is still a ratio of 1:1); J.A. 11004 (same); J.A. 11333 (same); J.A. 11526 (TAOS's expert witness explaining that even though the Derivative Products "replace[] the metal shield with a different type of shielding, which is a red/green filter," the Derivative Products "all use an interleaved 1:1 ratio of the wells"); J.A. 11529 (TAOS's expert testimony that confidential information "such as using the elongated diode spacing" and "the size, the shape, the length, the matching of the connection between [the diodes] or the distance between them" was "incorporated into various products"). On the evidence, the jury could reasonably include the Derivative Products in the group of sales made as a result of breach and thus award a royalty for those sales.[2]

---

[2] In an unelaborated sentence, Intersil asserts that "nothing justifies the jury's conclusion that Intersil would have paid the *same* royalty for products that incorporated the trade secret and products that did not." Intersil's Opening Br. at 55. That sentence "do[es] not amount to a developed argument" and is therefore insufficient to

Second: Intersil challenges the 10-year duration (starting from August 2004) of the hypothetical-negotiation royalty agreement that the jury may be inferred to have adopted in making its royalty award (which matched TAOS's proposed royalty amount, itself based on such an agreement), arguing that the jury could not reasonably find that Intersil would have agreed to a 10-year license. Intersil's Opening Br. at 55–57; *see* J.A. 11810–11. Intersil points to two reasons such a finding would not be reasonable—first, at the time of the hypothetical agreement, Intersil already knew that TAOS would release a product publicizing its trade secret within a few months, *id.* at 55–56 (citing J.A. 11862–68); and second, under the confidentiality agreement's terms, "Intersil knew it would be free to use any confidential information in three years," *id.* at 56; *see* J.A. 14924 ¶ 6 ("Our agreement expressed in this letter shall expressly survive until the third anniversary of the date of this letter agreement."). We reject this challenge.

What royalty arrangement Intersil would have agreed to in the hypothetical negotiation presents a factual question, and the jury's answer is a reasonable one (if not the only reasonable one). The jury heard testimony that Intersil would have agreed to the 10-year term to secure, among other things, the benefit of "entering the market sooner." J.A. 11806; *see* J.A. 11805–08 (TAOS's witness testimony explaining why Intersil would have agreed to a 10-year license for the benefit of immediately being able to use the confidential information); J.A. 12419 (TAOS's expert explaining that "the market was moving so quickly" that had Intersil waited for the agreement to expire, the confidential information disclosed under the parties' agreement would

present a same-rate challenge. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *see id.* at 1319–20; *see also, e.g.*, *Agile Defense, Inc. v. United States*, 959 F.3d 1379, 1384 n.* (Fed. Cir. 2020).

not have rendered Intersil a competitive threat). The jury was also shown evidence that a license agreement of 10 years would have been reasonable because ambient light sensors have a product life cycle of 5–10 years and because Texas Instruments had a 10-year licensing agreement with TAOS. J.A. 11805–06 (TAOS's witness testimony). We conclude that the jury's royalty finding is supported by substantial evidence.

IV

Intersil argues that the district court erred in determining that the confidentiality agreement authorized attorneys' fees for work in pressing the claim of breach of contract. Intersil's Opening Br. at 57–59. We reject this argument and therefore affirm the award of such fees.

The parties' confidentiality agreement states that it is governed by California law, J.A. 14924 ¶ 12, and under California law, the default rule is that attorneys' fees are not recoverable, *Reynolds Metals Co. v. Alperson*, 599 P.2d 83, 85 (Cal. 1979). For a contract claim, the default rule applies unless, as relevant here, the contract specifically provides for the recovery of fees and costs incurred to enforce the contract. *Id.*; CAL. CIV. CODE § 1717(a). Here, TAOS relies, for contractual authorization of fees, on the confidentiality agreement's indemnity clause, J.A. 14924 ¶ 7, which recites:

> Each of us will indemnify and hold harmless the other against any and all damage, losses or liability (including reasonable attorneys' fees) suffered by the other as a result of any breach of the representations, warranties, and agreements set forth herein.

Generally, an indemnity clause "relates to third party claims, not attorney[s'] fees incurred in a breach of contract action between the parties to the indemnity agreement itself." *Alki Partners, LP v. DB Fund Services, LLC*, 209 Cal.

Rptr. 3d 151, 171 (Ct. App. 2016) (citing *Carr Business Enterprises, Inc. v. City of Chowchilla*, 82 Cal. Rptr. 3d 128, 132 (Ct. App. 2008)). "The court will not infer that the parties intended an indemnification provision to cover attorney fees between the parties if the provision does not specifically provide for attorney[s'] fees *in an action on the contract*." *Id.* (citations and internal quotation marks omitted). Nevertheless, "[a]lthough indemnity generally relates to third party claims, this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." *Zalkind v. Ceradyne, Inc.*, 124 Cal. Rptr. 3d 105, 113–14 (Ct. App. 2011) (citations and internal quotation marks omitted). And language in an indemnity clause that provides for attorneys' fees "on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant" may entitle a prevailing party to attorneys' fees in actions brought against a counterparty for breach of contract. *Continental Heller Corp. v. Amtech Mechanical Services, Inc.*, 61 Cal. Rptr. 2d 668, 673 (Ct. App. 1997) (emphasis omitted).

Here, we agree with the district court that the confidentiality agreement provides for attorneys' fees. The indemnity clause expressly states that the parties will "hold harmless the other against any and all damage, losses or liability (including reasonable attorneys' fees) *suffered by the other* as a result of *any* breach of the representations, warranties, and agreements set forth herein." J.A. 14924 ¶ 7 (emphases added). That language indicates that it encompasses direct liability claims between the parties, so a harmed contract party—in this case, TAOS—may rely on it to recover fees. We therefore affirm the district court's award of attorneys' fees.

V

Prejudgment interest on monetary recoveries on state-law claims in federal court is governed by the claim-

supplying State's law. *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 595 (5th Cir. 2006). Prejudgment interest on the trade-secret award is thus governed by Texas law, and prejudgment interest on the contract award is governed by California law. "We review the district court's award of prejudgment interest for an abuse of discretion." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1262–63 (Fed. Cir. 2014) (citing *Telcordia Technologies, Inc. v. Cisco Systems, Inc.*, 612 F.3d 1365, 1377 (Fed. Cir. 2010), and *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)); *see also CenterPoint Energy Houston Electric LLC v. Harris County Toll Road Authority*, 436 F.3d 541, 550 (5th Cir. 2006) (same standard in Fifth Circuit). A district court abuses its discretion when it bases its award on "clearly erroneous factual findings, legal error, or a manifest error of judgment." *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995).

The district court awarded prejudgment interest on both the trade-secret and contract claims. *Prejudgment Interest Determination*, at 7–12. Intersil contends that the district court awarded too much interest—specifically, that the court abused its discretion in starting its interest-accrual computation for all Intersil sales at issue on November 25, 2008, when TAOS filed suit. Intersil's Opening Br. at 59–61. Intersil argues that some sales for which either a disgorgement (trade-secret) or reasonable-royalty (contract) award was made occurred after that date and TAOS "could not have been due disgorged profits or a reasonable royalty for sales that had yet to occur." *Id.* at 60.

It is undisputed that some of the sales covered by either the disgorgement or reasonable-royalty award occurred on or before the complaint-filing date of November 25, 2008. *See* J.A. 15814–15, 15870–71 (Intersil's product sales records). For such sales, the starting date for prejudgment interest is not in dispute before us. That date is November 25, 2008. It is also undisputed before us that all sales at issue here predated June 3, 2014, when the hypothetical

10-year licensing agreement between the parties would have expired. TAOS's expert so testified about the sales covered by the contract award, J.A. 11810, and we have not been shown that any sales covered by the trade-secret award occurred later. There thus is no dispute that TAOS is owed prejudgment interest from at least June 3, 2014, until the judgment date of December 14, 2021, for all the sales covered by either the disgorgement or reasonable-royalty award (all made before June 3, 2014); in any event, we see no substantial argument for challenging interest from June 3, 2014. What is disputed is when prejudgment interest began to accrue for the sales (covered by either the disgorgement or reasonable-royalty award) made after November 25, 2008 (but before June 3, 2014, if, as appears, all at-issue sales occurred before that date).

For sales covered by the contract claim, CAL. CIV. CODE § 3287(a) provides, with inapplicable exceptions, that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day," and § 3287(b) allows recovery of interest on an "unliquidated" contract claim from "a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." Those provisions certainly allowed the district court to award prejudgment interest on the contract claim here, from no earlier than November 25, 2008. But it is a separate question whether the district court could soundly exercise discretion to go back all the way to that date even for events that had not yet occurred. Subsection (a) suggests that prejudgment interest cannot begin to accrue until a loss-causing event—in this case, a sale of a unit of a specific Intersil product—occurs, as no right to recover for that event is vested until then. And cases offer reinforcement for the common-sense view that interest cannot accrue for monetary relief for an event until the event triggering the monetary relief has

occurred. *See, e.g.*, *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School District*, 108 Cal. Rptr. 2d 715, 718–21 (Ct. App. 2001); *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 128 (Ct. App. 1982); *Stinnett v. Damson Oil Corp.*, 813 F.2d 1394, 1398 (9th Cir. 1987) (citing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1106 (9th Cir. 1985)). Although the court has discretion about the starting date for prejudgment interest, as the district court recognized, *Prejudgment Interest Determination*, at 11, a California decision cited by the district court, *id.*, explains that "[j]udicial discretion must be guided and controlled by fixed legal principles" and "exercised impartially toward the end of substantial justice in accord with the spirit of the law," *George v. Double-D Foods, Inc.*, 201 Cal. Rptr. 870, 879 (Ct. App. 1984) (discussing § 3287(b)).

A similar analysis applies to prejudgment interest on the award for disgorgement of profits on sales that occurred after the complaint in this case was filed. The district court was certainly permitted, perhaps even required, to award prejudgment interest on the trade-secret claim. *Prejudgment Interest Determination*, at 7–8 (discussing Texas law). But relevant cases suggest that interest cannot accrue for a recovery-triggering event until the event has occurred. *See, e.g.*, *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 548–49 (5th Cir. 1987); *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex. 1986); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551–55 (Tex. 1985) (abrogated in part on other grounds by *Matthews*).

We vacate the district court's awards of prejudgment interest and remand the case to the district court for further consideration of this issue. We do not prejudge the outcome of such consideration. Further legal analysis of the case law just discussed may be warranted. In addition, consideration of practicalities is warranted—*e.g.*, how easy it is to identify dates of recovery-triggering sales during the disputed period of November 25, 2008, to June 3, 2014, and

to fashion calculation methods at a justifiable level of granularity. *Cf. Cavnar*, 696 S.W.2d at 555 (recognizing that "a system which would force litigants to determine precisely when each element of a plaintiff's damage award was incurred would impose an onerous burden on both the trial bench and bar"). TAOS, seeking prejudgment interest, has the burden of providing a practical method of performing a proper calculation of prejudgment interest. *See Lakin v. Watkins Associated Industries*, 863 P.2d 179, 189 (Cal. 1993); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 223 (Tex. App. 2003). As noted, there is no basis for disturbing substantial portions of the prejudgment interest award—interest on pre-complaint sales from the date of the complaint, and interest on all sales from June 3, 2014, to December 14, 2021. But for the disputed sales (made after November 25, 2008, but before June 3, 2014), it is up to the district court to decide when interest should start (between November 25, 2008, and June 3, 2014), exercising sound discretion based on consideration of the governing legal principles, the allocation of the burden of proof, and practical and other relevant constraints.

## VI

For the trade-secret claim, (1) we reverse the district court's finding that the properly accessible date is January 30, 2006, concluding instead that the proper accessibility date is February 28, 2005, but (2) we affirm the district court's determination that the relevant duration is 26 months and affirm the disgorgement award and (3) we affirm the exemplary-damages award. For the contract claim, we affirm the damages award and the attorneys' fees award for TAOS's work on that claim. We vacate the awards of prejudgment interest and remand for further proceedings in accordance with this opinion.

The parties shall bear their own costs.

**REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED**